# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLUBCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07cv1462 |
| | ) | |
| CAPTIVE MEDIA, INC., d/b/a HEALTH CLUB PANEL NETWORK, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

May 9, 2008

Presently before the Court is the MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER, with brief in support, filed by Defendant Captive Media, Inc., d/b/a Health Club Panel Network (Document Nos. 13 and 9), and the RESPONSE IN OPPOSITION filed by Plaintiff ClubCom, Inc. (Document No. 25). For the reasons that follow, the Motion will be denied.

### Procedural Background

On November 14, 2007, Plaintiff, ClubCom, Inc. ("ClubCom"), filed a four-count Complaint against Defendant Captive Media, Inc. d/b/a Health Club Panel Network ("Captive') in which it alleges that Captive breached the long term agreement of the parties which gave Captive the exclusive right to place national advertising on the digital entertainment network developed and operated by ClubCom. Distilled to its essence, ClubCom alleges that Captive was selling a "competing" network and that it had failed to use its "best efforts" to perform under the agreement.

Captive has brought the instant motion in which it contends that venue in the Western District of Pennsylvania is improper because (i) Captive does not reside in the District; (ii) none of the events or omissions giving rise to the claim are alleged to have occurred in the District; and, in the alternative, (iii) the lawsuit should be transferred to the United States District Court for the Central District of California.

**Factual Background**

ClubCom is a Delaware corporation, with its principal place of business in Pittsburgh, Pennsylvania.[1] ClubCom is engaged in the business of developing and operating customized digital entertainment networks, which it broadcasts to health clubs through the United States. The offices of ClubCom are located in Pittsburgh, Pennsylvania, and ClubCom does not conduct business from any other location. ClubCom is licensed to do business in Pennsylvania and files tax returns in Pennsylvania. Every ClubCom employee works out of Pittsburgh. The central operating equipment of ClubCom, including its server, computer network, video production and entertainment studios, as well as its advertising placement and tracking systems are all located in Pittsburgh. The ClubCom Network is broadcast from ClubCom's servers in Pittsburgh and everyone who uses the Network does so through Pittsburgh.

---

[1] Captive argues that the Agreement at issue states that the "principal address" of ClubCom is in Woodinville, Washington. Interestingly, because "the parties consider the terms of the Agreement confidential, [the Agreement] has not been provided to the Court." Def's Memo. at 4 n1. According to ClubCom, in 2004, it became a wholly owned subsidiary of Amer Sports, a Finnish corporation engaged in the business of selling sporting goods. Amer Sports also owns Precor, Inc. ("Precor"), another sporting goods company which is a separate entity from ClubCom. Precor has its principal place of business in Woodinville, Washington.

2

Captive is a California corporation with its principal place of business in Encino, California. Captive provides advertising space to advertisers and advertising agencies in over 2,500 health clubs throughout the nation with which Captive has license agreements.

In March 2003, Michael Lederer, the Vice President of Captive, approached Thomas Lapcevic, the President of ClubCom, about securing non-exclusive rights to sell digital advertisements on the ClubCom Network. During four months of negotiations, Mike Lederer and Eugene "Gene" Lederer, the President of Captive, exchanged over fifty (50) emails and telephone calls with Tom Lapcevic; Rich Wonsettler, the former CFO of ClubCom, and Mike Brak, the former Vice President of Sales of ClubCom. The majority of those electronic communications were between Mike Lederer and Tom Lapcevic. Tom Lapcevic, Rich Wonsettler, and Mike Brak were located at ClubCom's office in Pittsburgh for the majority of those negotiations. On July 18, 2003, the parties entered into a "Media Placement Agreement," under which Captive sold advertising on the ClubCom Network for a two and a half (2-½) year period.

Captive has placed static advertising in Pittsburgh and has sent Captive media kits to Pittsburgh advertising agencies since at least 2000. Consequently, between 2000 and 2007, Captive entered into "Venue Lease Agreements" with ten (10) different health club facilities located in the Western District of Pennsylvania to install advertising panels ("Media Displays") in those clubs. Most of the Venue Lease Agreements are controlled by Pennsylvania law and all of them have been extended for a period of five to ten years.

From January 2004 to February 2008, Captive employed Jim Rice, a Pittsburgh-based independent contractor, approximately 130 times to install new advertisements and

3

panels and to uninstall old ones at health clubs located within the Western District of Pennsylvania.

In March 2004, before the Media Placement Agreement expired, representatives from ClubCom and Captive began discussing the possibility of Captive obtaining the exclusive right to place national advertisements on ClubCom's network. After lengthy negotiations, the parties entered into a contract, the "ClubCom - Captive Advertising Rights License Agreement" and a Letter Agreement Regarding Captive Facilities, both dated March 7, 2006, which granted Captive exclusive rights to sell advertising on the ClubCom Network for a term of ten and a half (10-½) years. In exchange, ClubCom would receive 20% of the revenue generated by the advertisements. By its express terms, the Agreement was not to expire until June 30, 2016.

To acquire exclusive advertising rights over the ClubCom Network, Captive had to simultaneously acquire rights held by New Media and Active Media, two companies located in Pittsburgh, Pennsylvania. The negotiations between Captive, ClubCom, New Media, and Active Media involved hundreds of emails and telephone calls between representatives of ClubCom, Captive, New Media, and Active Media. The bulk of Captive's communications were with Paul Bryne in Seattle (President of Precor), Ray Berens in Chicago (General Counsel for Amer Sports) and Tom Lapcevic and Rich Wonsettler in Pittsburgh (ClubCom). In August 2004, October 2004, and May 2006, representatives from Captive traveled to Pittsburgh for face-to-face meetings with representatives from ClubCom, New Media and Active Media. In-person negotiations were also conducted at the Encino, California office of Captive.

ClubCom signed the Advertising Rights Agreement in the Precor office in Washington; Captive signed the Agreement in California.

Following the execution of the exclusive Advertising Rights Agreement in March 2006, Captive and ClubCom communicated on a regular basis about research, solicitation, sales, broadcasting, and payment for the advertisements that were to be broadcast from the ClubCom Network in Pittsburgh. From March 2006 to November 2007, Captive sold twenty-seven (27) advertisements. Each advertisement was sent to Pittsburgh to be placed on the ClubCom Network and each advertisement was then broadcast or sent from the ClubCom Network in Pittsburgh to the health club facilities that used the ClubCom Network. The process of soliciting, securing, and broadcasting the advertisements generated in excess of 500 emails between Captive and ClubCom employees. ClubCom argues that virtually all of these emails were received or sent by ClubCom employees who worked out of Pittsburgh.

Additionally, ClubCom provided Captive with an account to access its server in Pittsburgh. Captive would access ClubCom's server in order to utilize the cost calculator and to utilize its playback database to generate status reports on the playback of advertisements. The record reflects that from May 2006 to November 2007, Captive employees logged-in to the Pittsburgh server a total of 439 times, accessing the cost-calculator 173 times and the playback database 266 times.

**Standard of Review**

In considering a motion to dismiss for improper venue under Federal Rule of Civil. Procedure 12(b)(3), the Court must generally accept as true the allegations in the complaint, unless contradicted by defendant's affidavits. *Holiday v. Bally's Park Place, Inc.*, 2007 WL 2600877, at *1 (E.D. Pa. Sep.10, 2007)*.* "The court may examine facts outside the complaint to

determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiff's favor." *Fellner v. Philadelphia Toboggan Coasters, Inc.*, 2005 WL 2660351, at *1 (E.D. Pa. Oct.18, 2005); *accord Heft v. AAI Corp.*, 355 F. Supp.2d 757, 762 (M.D. Pa.2005) ("Whatever the nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff.").

The United States Court of Appeals for the Third Circuit has held that the movant (the defendant) bears the burden of demonstrating that venue is not proper. *Myers v. American Dental Ass'n*, 695 F.2d 716, 724 (3d Cir.1982). The defendant also bears the burden of establishing that a venue transfer is warranted. Furthermore, "in ruling on defendant's [transfer] motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir.1995).

Questions of venue are governed by either 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406. *See Jumara*, 55 F.3d at 878. The standards for transfer of an action differ depending on whether venue has been properly laid. Section 1404(a) provides that transfer to another proper venue is appropriate "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.*

Unlike § 1404(a), section 1406, provides for either transfer or dismissal of an action where the original venue is improper. Specifically, § 1406 states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* The burden of establishing the need for transfer under either § 1404(a) or § 1406 rests with the moving party. *See In re United States*, 273 F.3d 380, 388 (3d Cir. 2001).

In the matter before the Court, Captive has requested, in the alternative, to transfer the case to the United States District Court for the Central District of California pursuant to § 1404(a).

**Discussion**

Because the standards for transfer depend upon whether venue has been properly laid, the Court must first determine whether venue is proper in the Western District of Pennsylvania. Next, the Court must determine whether transfer would be appropriate in accordance with the factors enunciated by the applicable standard, § 1404(a) or § 1406.

1. <u>Venue</u>

In a civil action in which jurisdiction is based solely on diversity of citizenship, such as the present case, venue is governed by 28 U.S.C. § 1391(a), which provides that venue may be proper only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

ClubCom contends that venue is proper because Captive (i) has extensive business contacts with the Western District of Pennsylvania and (ii) a substantial amount of Captive's negotiations and performance of the Advertising Rights Agreement occurred in the Western District of Pennsylvania. ClubCom argues that both general and specific jurisdiction exist in this case.

On the other hand, Captive contends that venue is not proper because it is not subject to either general or specific jurisdiction in the Western District of Pennsylvania and that "none, let alone a substantial part, of the events or omissions giving rise to the claims are alleged to have occurred in the district." Memo. at 11.

    a.    General Jurisdiction

General jurisdiction is implicated when the claim arises from the defendant's non-forum-related activities. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 411 n.9 (1984). In such a case, the plaintiff "must show significantly more than mere minimum contacts." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To assert general jurisdiction, the plaintiff must demonstrate that the defendant's contacts with the forum state were "continuous and substantial." *Id.; Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 541 (3d Cir. 1985). The threshold for establishing general jurisdiction is very high and requires a showing of "extensive and pervasive" facts demonstrating connections with the forum state. *Reliance Steel Prods. Co. v. Watson, Ess. Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir. 1982). Federal courts sitting in Pennsylvania consider the following objective criteria in ascertaining the existence of general jurisdiction:

    (i) whether defendant is incorporated or licensed to do business in Pennsylvania;

    (ii) whether the defendant has ever filed any tax returns with the Commonwealth of Pennsylvania;

    (iii) whether the defendant files administrative reports with any agency or department of the Commonwealth;

    (iv) whether the defendant regularly purchases products or supplies within Pennsylvania for use in its business outside of the state;

    (v) whether the defendant owns land or property within the state;

> (vi) whether the defendant advertises in Pennsylvania; and
>
> (vii) whether the defendant maintains an agent in Pennsylvania.

*Wims v. Beach Terrace Motor Inn, Inc.*, 759 F. Supp. 264, 269 (E.D. Pa. 1991).

In support of its contention that it is not subject to general jurisdiction in the Western District of Pennsylvania, Captive argues that

> 1. "Captive entered into the Agreement with ClubCom - ClubCom alleges in the Complaint that its principal place of business is in Pittsburgh even though the Agreement recites that it is a Delaware corporation with its principal place of business in Washington; and
>
> 2. Of the over 2,500 health clubs in which Captive placed advertisements, a mere ten of these were in this District."

Memo. at 7.

At the beginning stage of litigation, in which Plaintiff's claims have not yet been proven and the evidentiary record is particularly sparse, the issue of whether venue is properly laid in this District is not a simple determination. However, the evidentiary record developed in this case to date reflects that Captive has frequently contacted advertisers and health clubs within the Western District since 2000 and intends to continue to do so through at least 2022. Captive is also a party to long-term Venue Lease Agreements with ten (10) health clubs located within the Western District of Pennsylvania that allow Captive to rent space for its Media Displays. Most of these agreements are controlled by Pennsylvania law and all have been renewed for additional terms of five to ten years.

The record also reflects that Captive routinely contacts health clubs in this district to offer product samples, update information, and approve the advertisements it has sold. Since

2004, Captive has worked with an independent contractor in the Western District to install and maintain local Media Displays.

Captive argues, however, that it does not have the requisite minimum contacts with the Western District because its advertising business in the Western District comprises only a small percentage of its nationwide business. However, where a defendant conducts only a portion of its business in the forum, the nature of that business is more important than the percentage. *Provident*, 819 F. 2d at 435, 438 (finding that defendant-bank was subject to general jurisdiction in Pennsylvania even though it held less than 1% of its deposits from and issued less than 1% of its loans to residents of the forum, did not maintain an office, employees, agents, mailing address or a telephone number in the forum, and did not advertise, pay taxes or apply to do business in the forum.)

Based on the evidentiary record, the Court finds and rules that the advertising conducted by Captive in the Western District is central to its nationwide business and provides ample support for finding that general jurisdiction exists.

b. Specific Jurisdiction

Specific jurisdiction applies where the plaintiff's cause of action arises from the defendant's forum-related activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 426, 472 (1985). "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there.' " *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980); *Mellon Bank (E.) PSFS v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993).

Captive contends that it does not have minimum contacts with this forum which would "represent events giving rise to the action." According to Captive, it negotiated the Agreement with ClubCom executives in Washington and ClubCom executed the Agreement in Washington. Further, Captive argues that any "static advertising" it does in this district does not have any connection to this lawsuit.

In response, ClubCom points out that Captive extensively negotiated the Advertising Rights Agreement with representatives of ClubCom (the majority of whom were located in Pittsburgh). Moreover, Captive contemplated long-term performance in Pittsburgh under the Advertising Rights Agreement by agreeing to exercise its bests efforts to promote a company located in Pittsburgh and to secure advertising on a network broadcast from Pittsburgh for a period of ten and a half years.

The evidentiary record reflects that under the Advertising Rights Agreement from March 2006 to November 2007, Captive had the following contacts with Pittsburgh:

- Exchanged in excess of 500 emails and hundreds of telephone calls with ClubCom employees located in Pittsburgh;

- Sent seven (7) checks totaling almost $200,000 royalties to ClubCom in Pittsburgh;

- Sent forty-five (45) insertion orders to ClubCom in Pittsburgh;

- Sent advertisements to be broadcast or sent from ClubCom Network in Pittsburgh; and

- Logged-in to ClubCom's Pittsburgh server 439 times.

Based on this record, the Court finds and rules that Captive extensively communicated with ClubCom in Pittsburgh during the performance of the Advertising Rights

Agreement and that Captive's post-execution contacts with the Western District of Pennsylvania provide ample support for finding that specific jurisdiction exists.

      c.      <u>Substantial Part of the Events Giving Rise to the Lawsuit Occurred in the Western District of Pennsylvania</u>

Under § 1391(a)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Where a substantial part of the negotiations, performance or injury which relate to the transaction at issue occurred in the forum, district courts consistently find that venue is proper. *See Pro Spice, Inc. v. Omni Trade Grp., Inc.*, 173 F. Supp. 2d 336, 340 (E.D. Pa. 2001). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough" for proper venue to be found. *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

Captive argues that none of its alleged breaches have any connection with Pennsylvania. In support of its argument, Captive relies upon Paragraph 63 of the Complaint which states that Captive violated the Agreement when it allegedly "sought the business and presented . . . [several] Gold's Gym Facilities with its [allegedly] competing network." Complaint at ¶ 63. According to Captive, the Gold's Gym Facilities are located in New York.

ClubCom also contends that Captive breached the Agreement when it approached a representative of the Jewish Community Center ("JCC"). According to Captive, it met the JCC at a trade show in Chicago and had discussions via telephone with JCC from Encino with a JCC representative in New York.

In response, ClubCom points out that (i) Captive engaged in extensive negotiations over the Advertising Rights Agreement with ClubCom representatives located in the Western

District; (ii) that the parties intended for performance to occur in the Western District; and that (iii) the parties did in fact perform in the Western District.

As discussed in detail *supra,* the Court finds that a substantial part of the events which have given rise to this lawsuit occurred in the Western District of Pennsylvania and, thus, venue is also proper under § 1391(a)(2).

Because the Court has concluded that this District is an appropriate venue, the applicable statutory provision to be considered for transfer of the action is 28 U.S.C. § 1404(a).

2. Transfer Pursuant to § 1404(a)

Section 1404(a) provides for the transfer of a case to another district where it might have been brought in the "interest of justice" and "for the convenience of parties and witnesses." The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). When ruling on a motion to transfer, "a court should consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by the transfer to a different forum." *Jumara*, 55 F.3d at 879.

Captive argues that this case should be transferred to the United States District Court for the Central District of California because that is the district in which Captive resides.

When considering whether to transfer an action under § 1404(a), a court should not solely limit its consideration to § 1404(a)'s enumerated factors of convenience of the parties,

convenience of the witnesses, or interests of justice, but should consider all relevant factors, including both private and public factors. *Jumara*, 55 F.3d at 879.

The private factors relevant to a transfer analysis include:

- the plaintiff's forum preference;

- the defendant's preference;

- whether the claim arose elsewhere; and

- the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora and the location of books and records (similarly limited to the extent that they could not be produced in one of the fora).

*Id.*

The public interests include:

- the enforceability of the judgment;

- practical considerations that could make the trial easy, expeditious, or inexpensive;

- the relative administrative difficulty in the two fora resulting from court congestion;

- the local interest in deciding local controversies at home;

- the public policies of the fora; and

- the trial judge's familiarity with applicable state law.

*Id.* at 879-80.

The private and public factors are to be balanced and weighed. It is important to keep in mind that "unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431

F.2d 22, 25 (3d Cir. 1970) (emphasis in original). Thus, "the defendant must show that its alternative forum is more convenient; if factors are in equipoise, transfer is not proper." *Id.*

    *a.*    *Private Factors*

The forum preference of ClubCom is the Western District of Pennsylvania. ClubCom is a Delaware corporation, with its principal place of business in Pittsburgh. Plaintiff's choice of forum garners "paramount consideration" that should not be disturbed lightly. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Accordingly, this factor favors maintaining this action in this District.

The forum preference of Captive is California. However, as stated supra, the Plaintiff's choice of forum garners "paramount consideration" that should not be disturbed lightly.

The Court has already found that a substantial part of the activities and events which have given rise to this lawsuit occurred in the Commonwealth of Pennsylvania. Again, this factor favors maintaining the action in this District.

The last private factor to be considered, convenience of the parties and the witnesses, also weighs in favor of Pennsylvania. It would be equally as inconvenient for ClubCom to litigate in California as it would be for Captive to litigate in this district. Captive argues that ClubCom is part of a multi-national conglomerate with offices all over the world. However, Mike Lederer at his deposition indicated that Captive did "eight figures" worth of business in 2007.

Captive also argues that the majority of its witnesses are based on California. However, Captive has not shown that witnesses would suffer hardship or evidence would be

15

unavailable for trial in the Western District. On the contrary, it appears that all evidence which relates to the ClubCom Network is maintained in Pittsburgh and communications from ClubCom which related to the ClubCom Network were sent from Pittsburgh. Thus, this factor also militates in favor of maintaining this action in the Western District of Pennsylvania.

  2. *Public Factors*

Initially, it appears that a transfer would not adversely effect either party's ability to enforce a judgment. Accordingly, the Court concludes that this factor favors neither party

As to the practical considerations that could make the trial easy, expeditious or inexpensive, the Court finds and rules that Pennsylvania is the better forum since many witnesses and relevant documentation is located in Pittsburgh. Captive contends that the "record does not show that this factor militates against transfer." However, ClubCom has produced relevant statistics which reflect that the Central District of California is almost five (5) times more crowded than the Western District of Pennsylvania. Accordingly, the Court finds and rules that this public factor weighs strongly in favor of keeping the litigation in the Western District of Pennsylvania.

As for the local interest in deciding local controversies at home and the public policies of the fora, it appears that Pennsylvania has a strong interest in providing a forum as ClubCom is a resident of Pennsylvania, having its principal place of business in Pittsburgh. Further, ClubCom has demonstrated that a significant amount of the negotiations and

performance which give rise to this lawsuit occurred in this District. Accordingly, the Court finds and rules that this factor favors against a transfer.

Lastly, the public factor regarding the trial judge's familiarity with applicable state law does not weigh in favor of either party. According to Captive, the Agreement at issue is governed by Delaware law. The Court concludes that trial judges in either district are equally capable of applying Delaware law to the provable facts of this lawsuit.

### 3. *The Balance of the Private and Public Factors*

After carefully considering and balancing the private and public interests of the parties, the Court finds and rules that the factors weigh heavily against a transfer. The location of operative events, the location of relevant books and records, and the practical considerations that could make trial easy, expeditious or inexpensive favor against a transfer.

These factors, when combined with the interest of justice, make a compelling argument against a transfer under § 1404(a).

## CONCLUSION

After an extensive review of the case and weighing of all private and public factors, the Court finds and rules that this case should not be transferred. Not only will the litigation proceed more conveniently in Pennsylvania, but the interest of justice will be better served by maintaining this lawsuit in this forum.

An appropriate Order follows.

McVerry, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLUBCOM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 07cv1462 |
| | ) | |
| CAPTIVE MEDIA, INC., d/b/a HEALTH CLUB PANEL NETWORK, | ) ) | |
| | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 9th day of May, 2008, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the Motion to Dismiss for Improper Venue, Or, In The Alternative, to Transfer is **DENIED.**

Captive shall respond to Plaintiff's Complaint within ten (10) days on or before **May 23, 2008.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: J. Scott Humphrey, Esquire
Seyfarth Shaw
Email: shumphrey@seyfarth.com

Michael D. Wexler, Esquire
Seyfarth Shaw
Email: mwexler@seyfarth.com

Susan A. Yohe, Esquire
Buchanan Ingersoll
Email: susan.yohe@bipc.com

David A. Strassburger, Esquire
Strassburger, McKenna, Gutnick & Gefsky
Email: dstrassburger@smgglaw.com

Louis P. Petrich, Esquire
Leopold, Petrich & Smith, P.C.
Email: lpetrich@lpsla.com

Vincent Cox, Esquire
Leopold, Petrich & Smith
Email: vcox@lpsla.com