**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLUBCOM, INC., | ) | Case No. 2:07-CV-01462-TFM |
| | ) | |
| Plaintiff, | ) | |
| | ) | Hon. Terrence F. McVerry |
| v. | ) | |
| | ) | |
| CAPTIVE MEDIA, INC. | ) | |
| d/b/a HEALTH CLUB PANEL NETWORK | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| CM SHAREHOLDER HOLDINGS, INC., | ) | |
| f/k/a/ CAPTIVE MEDIA, INC., | ) | |
| d/b/a HEALTH CLUB PANEL NETWORK, a | ) | |
| California Corporation, | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLUBCOM, INC., a Delaware Corporation; | ) | |
| PRECOR, INC., a Delaware Corporation; | ) | |
| AMER SPORTS COMPANY, a Delaware | ) | |
| Corporation; and AMER SPORTS OYJ a/k/a | ) | |
| AMER SPORTS CORPORATION, organized | ) | |
| under the laws of Finland, | ) | |
| | ) | |
| Counterdefendants. | ) | |
| _____ | ) | |

**OPPOSITION BY DEFENDANT AND COUNTERCLAIMANT CM SHAREHOLDER
HOLDINGS, INC., f/k/a/ CAPTIVE MEDIA, INC. TO CLUBCOM'S AND PRECOR'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS
III THROUGH X OF CAPTIVE'S FIRST AMENDED COUNTERCLAIM**

**TABLE OF CONTENTS**

I.     INTRODUCTION...........................................................................................1

II.    THE APPLICABLE PENNSYLVANIA CHOICE OF LAW PRINCIPLES ...................2

III.   IN THE EVENT OF ANY "TRUE CONFLICT" OF LAW, THE RELEVANT
       CONTACTS SET FORTH IN THE FAC STRONGLY FAVOR APPLICATION
       OF CALIFORNIA LAW. ...............................................................................5

IV.    IF MOVANTS' PORTRAYAL OF PENNSYLVANIA LAW RESPECTING
       COUNTS 3 THROUGH 10 WERE ACCURATE, IT WOULD RESULT IN A
       "FALSE CONFLICT" REQUIRING THE APPLICATION OF CALIFORNIA
       LAW .......................................................................................................7

V.     CM'S THIRD CLAIM FOR INTERFERENCE WITH CONTRACTUAL
       RELATIONS STATES A CLAIM UNDER THE RELEVANT CALIFORNIA
       LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW).................8

VI.    CM'S FOURTH CLAIM FOR INTENTIONAL INTERFERENCE WITH
       PROSPECTIVE ECONOMIC ADVANTAGE STATES A CLAIM UNDER THE
       RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER
       PENNSYLVANIA LAW) .............................................................................11

VII.   CM'S FIFTH CLAIM FOR CONVERSION STATES A CLAIM UNDER THE
       RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER
       PENNSYLVANIA LAW) .............................................................................12

VIII.  CM'S SIXTH CLAIM FOR VIOLATION OF CALIFORNIA BUS. & PROF.
       CODE § 17200 STATES A CLAIM UNDER THE RELEVANT CALIFORNIA
       LAW .......................................................................................................15

IX.    CM'S SEVENTH CLAIM FOR UNJUST ENRICHMENT STATES A CLAIM
       UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE
       ALTERNATIVE, UNDER PENNSYLVANIA LAW) ...................................17

X.     CM'S EIGHTH CLAIM FOR AN ACCOUNTING STATES A CLAIM UNDER
       THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE,
       UNDER PENNSYLVANIA LAW)...............................................................18

XI.    CM'S NINTH CLAIM FOR DECLARATORY RELIEF STATES A CLAIM
       UNDER THE RELEVANT DELAWARE LAW..............................................19

XII.   CM'S TENTH CLAIM FOR IMPOSITION OF A CONSTRUCTIVE TRUST
       STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN
       THE ALTERNATIVE, UNDER PENNSYLVANIA LAW).........................19

XIII.  CONCLUSION .........................................................................................20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bell Atlantic Corp. v. Twombley*, 550 U.S. --, 127 S.Ct. 1955, 1965 (2007)......................1

*In re American Investors Life Insurance Co.*, No. 04-2535, 2007 U.S.Dist. LEXIS 64967...........................................................................................................................18

*Babcock & Wilcox Ebensburg Power, Inc. v. Zurich American Insurance Co.*, 368 F.Supp.2d 387 (W.D.Pa. 2004) ...............................................................................3

*Berg Chilling Sytems, Inc. v. Hull Corp.*, 435 F.3d 455 (3d Cir. 2006)............................4

*Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir.Pa. 2001) ....................................................................................................................9, 10

*In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1425 (3d Cir. 1997) ...............5

*Compagnie des Bauxites de Guinee v. Argonaut-Midwest Insurance Co.*, 880 F.2d 685 (3d Cir.1989) .......................................................................................................3

*Garcia v. Plaza Oldsmobile Ltd.*, 421 F.3d 216 (3d Cir.2005)................................2, 3, 4

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ...............................1

*Hammersmith v. TIG Insurance Co.*, 480 F.3d 220 (3d Cir.2007) ...........................3, 4, 5

*Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989 (3d Cir.1987) .....................17

*Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165 (3d Cir. 1997).................................................................................................17

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170 (3d Cir.1991) .................................................................................3, 4, 8, 10, 12, 15, 17, 18, 19, 20

*Matoff v. Brinker Restaurant Corp.*, 439 F.Supp.2d 1035 (C.D.Cal. 2006)....................16

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)..........................................1

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ...........................................1

*Romy v. Burke*, No. 1236, 2003 Pila. Ct. Com. Pl. LEXIS 67 at *13-5 (2003) (in Westlaw database at 2003 WL 21205975 ....................................................................1

*Shane v. Fauver*, 213 F.3d 113 (3d. Cir. 2000)...............................................................20

*Taylor v. Mooney Aircraft Corp.*, 430 F.Supp.2d 417 (E.D.Pa. 2006)..............................4

## STATE CASES

*Al Hamilton Contracting Co. v. Cowder*, 434 Pa.Super. 491, 644 A.2d 188 (1994).........8

*Buckaloo v. Johnson*, 14 Cal.3d 815, 122 Cal.Rptr. 745 (1975).....................................11

*Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 531 A.2d 1122 (1987)........................................................................................................................18

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)..........................................................................15

*Committee on Children's Television v. General Foods Corp.*, 35 Cal.3d 197, 197 Cal.Rptr. 783 (1983)....................................................................................................15

*Commonwealth v. Cygan*, 212 Pa.Super. 384, 243 A.2d 476 (1968)...............................13

*Commonwealth v. Spiegel*, 169 Pa.Super. 252, 82 A.2d 692 (1951) ...............................13

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 96 Cal.Rptr.2d 518 (2000).............................................................................................................................16

*Coy v. E. F. Hutton & Co.*, 44 Cal.App.2d 386, 112 P.2d 639 (1941)............................12

*Eisenhauer v. Clock Towers Associate*, 399 Pa.Super. 238, 582 A.2d 33 (1990) ............12

*In re Estate of Hall*, 517 Pa. 115, 535 A.2d 47 (1987)....................................................18

*eToll Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10 (Pa.Super. 2002 )......................9

*Flennaugh v. Heinrich*, 89 Cal.App.2d 214, 200 P.2d 580 (1948) ..................................12

*Fletcher v. Security Pacific National Bank*, 23 Cal.3d 442, 153 Cal.Rptr. 28 (1979) ......16

*Gray v. Leibert*, 357 Pa. 130, 53 A.2d 132 (1947)..........................................................20

*Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964)...............................3, 4

*Hischemoeller v. National Ice etc. Storage Co.*, 46 Cal.2d 318, 294 P.2d 433 (1956)...........................................................................................................................12

*Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29 (2003)..........................................................................................................................11

*Lectrodryer v. Seoul Bank*, 77 Cal.App.4th 723, 91 Cal.Rptr.2d 881 (2000).........7, 17, 18

*Meier v. Maleski*, 167 Pa. Commw. C 648 A.2d 595 (1994)..........................................18

*Metzler v. Foster Holding Co.*, 5 Cal.2d 278, 54 P.2d 447 (1936) .................................12

*Norriton East Realty Corp. v. Central-Penn National Bank*, 435 Pa. 57, 254 A.2d 637 (1969) ......................................................................................................................12

*Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572 (Pa. Super. Ct.2003).................13

*Quelimane Co. v. Stewart Title Guaranty Co.*, 19. Cal.4th 26, 55, 77 Cal.Rptr.2d 709 (1988).....................................................................................................................8

*Roberson v. Davis*, 397 Pa.Super. 292, 580 A.2d 39 (1990) ..........................................20

*Ruffing v. 84 Lumber Co.*, 410 Pa.Super. 459, 600 A.2d 545 (1991)..............................11

*Scott's V. F. Exch. v. Growers Refrigeration. Co.*, 81 Cal.App.2d 437, 184 P.2d 183 (1947) ...........................................................................................................9

*Shared Communications Services of 1800-80 JFK Blvd. Inc. v. Bell Atlantic Properties Inc.*, 692 A.2d 570 (Pa. Super. 1997) ........................................................9

*Torchia on behalf of Torchia v. Torchia*, 346 Pa.Super. 229, 499 A.2d 581 (1985) ........17

*Weiss v. Marcus*, 51 Cal.App.3d 590, 124 Cal.Rptr. 297 (1975)................................7, 20

*Wilson v. Blue Cross of So. California*, 222 Cal.App.3d 660, 271 Cal.Rptr. 876 (1990) ...............................................................................................................10, 18

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b).......................................................................................................1, 5

Fed. R. Civ. P. 8(d) ...........................................................................................................17

## STATE STATUTES

California Bus. & Prof. Code § 17200, *et seq*....................................................1, 15, 16

California Bus. & Prof. Code §§ 17500-17577.5...............................................................15

California Civ.Code § 1714(a) (West 2008)..............................................................10, 18

California Prop. 64 ........................................................................................................1, 17

Del. Code Ann. tit. 10 § 6501 ...........................................................................................19

Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq* ..................................................................................................16

## TREATISES

5B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1357, at 564-65 ......................................................................................................1

Stern, Bus. & Prof. Code *§ 17200 Practice,* Chapter 2 (Rutter Group 2008) ........7, 16, 16

5 B. Witkin, *Summary of California Law* (10th ed. 2005) ................................................1

B. Witkin, *California Procedure* (5th ed. 2008).......................................7, 12, 18, 19, 20

I.      **INTRODUCTION**

The court should deny the F.R.C.P. Rule 12(b)(6) motion (the "Motion") brought by

plaintiff and counterdefendant ClubCom, Inc. ("ClubCom"),and joined by counterdefendants

Precor, Inc. ("Precor") and Amer Sports Company ("AmerCo") (collectively, "Movants"), seeking

dismissal to the First Amended Counterclaim ("FAC") by defendant and counterclaimant CM

Shareholder Holdings, Inc. ("CM").   As of the writing of this brief, counterdefendant Amer Sports

Oyj ("AmerOyj") has not appeared.

Like a common law demurer, a Rule 12(b)(6) motion  simply tests the legal sufficiency of

claims stated in a complaint, requiring the court to determine nothing more than whether the facts

alleged in the complaint, if true, would entitle the plaintiff to relief.  *Bell Atlantic Corp. v.

Twombley*, 550 U.S. --, 127 S.Ct. 1955, 1965 (2007).  In ruling on 12(b)(6) motions, courts must

"'accept all factual allegations as true, construe the complaint in the light most favorable to the

plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002).  "The motion to dismiss for

failure to state a claim is viewed with disfavor and is rarely granted."  *Gilligan v. Jamco

Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (internal quotations omitted); 5B Charles

Alan Wright & Arthur R. Miller, *Federal Practice & Procedure: Civil* § 1357, at 564-65 (3d ed.

2004) ("Wright & Miller") (citing "many illustrative cases drawn from all parts of the federal

court system").

CM's First Amended Counterclaim alleges sufficient facts to entitle CM to relief.

Movants ignore Rule 12's limits and effectively move for summary judgment based on nothing

more than a re-assertion of allegations of CM's complaint by means of an alternative "statement

of facts", and myriad misstatements of law to material issues.[1]

---

[1] In their motion, Movants cite **16** unpublished cases.  Movants apparently failed to review their
citations to determine whether the principles relied upon remain (or were ever) good law.  For
example, in discussing California's Unfair Compeition Law (Cal. Bus. & Prof. Code § 17200, *et
seq.*), Movants invoke standing rules (not even relevant to this case) that were repealed by popular
referendum four years ago.  Motion, p. 8 n. 5; *cf.* Calif. Prop. 64, § 2 (amending Bus. & Prof.

However, although the Motion is without any legal merit, it <u>does</u> contain key admissions with which Movants must be charged.  Specifically, through their strident arguments that, under Pennsylvania law, no possible claim for relief can be distilled from CM's counterclaims, Movants have effectively admitted that a "false conflict" exists with respect to the choice between California and Pennsylvania law.  Accordingly, by Movants' own admission, under the Pennsylvania choice of law principles applicable to this case, California law must be applied with respect to Counterclaims III-VIII and X.[2]  Even without this admission, however, the relevant facts show that California law should govern these claims.

## II.     THE APPLICABLE PENNSYLVANIA CHOICE OF LAW PRINCIPLES

CM maintains that California law applies to each of its claims, except for its two claims arising directly from a written contract (<u>First</u> Claim for Breach of Written Contract and <u>Second</u> Claim for Breach of Implied Covenant of Good Faith and Fair Dealing) and one claim (<u>Ninth</u> Claim for Declaratory Relief) that is ancillary to the written contract.[3]  Because the written contract giving rise to these claims contains a Delaware choice of law provision, the claims are governed by Delaware law.  In their 12(b)(6) motion, Movants agree that Delaware law governs the First, Second and Ninth Claims, but assert that Pennsylvania law applies to all of the other claims.

Since this is a diversity case, the court "determine[s] which state's substantive law governs by applying the choice-of-law rules of the jurisdiction in which the district court sits." *Garcia v.*

---

Code § 17203, available at: http://vote2004.sos.ca.gov/voterguide/propositions/prop64text.pdf ).  Further, Movants devote an entire page of their Motion arguing that California's UCL only applies where "members of the public are likely to be deceived" -- a requirement that has never existed in the state.  *See generally* Stern, *Bus. & Prof. Code § 17200 Practice,* Chapter 2 ("Historical Origins") (The Rutter Group 2008) ("Stern, *Bus. & Prof. Code*").  In another instance, Movants argue that a claim for a constructive trust is invalid, citing as their sole authority a Philadelphia trial court ruling <u>allowing</u> a claim for a constructive trust to proceed!  Motion, p. 19 (citing *Romy v. Burke*, No. 1236, 2003 Pila. Ct. Com. Pl. LEXIS 67, at *13-5 (Pa. D. May 2, 2003) (in Westlaw database at 2003 WL 21205975, with claim for constructive trust recognized at *5).

[2] Movants and CM agree that Delaware law applies to Counterclaims I, II and IX.  See Motion, p. 6 n. 3.

[3] The written contract at issued, and amending letter agreement, is described in paragraphs 19-27 of the FAC and are hereinafter collectively referred to as the "Agreement."

*Plaza Oldsmobile Ltd.*, 421 F.3d 216, 219 (3d Cir.2005) (citation omitted); *Babcock & Wilcox Ebensburg Power, Inc. v. Zurich American Ins. Co.*, 368 F. Supp. 2d 387, 397 (W.D.Pa. 2004) (federal court sitting in diversity in Pennsylvania forum applies Pennsylvania choice of law analysis).  Here, Pennsylvania's choice of law rules govern.

Pennsylvania's controlling choice of law principles derive from *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805 (1964), which articulated a "flexible [choice of law] rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 416 Pa. 21.  The court first must identify whether there are relevant differences between the states' laws that would affect the disposition of the litigation. If not, there is no conflict, and the court "may refer to the states' laws interchangeably." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 229 (3d Cir.2007). If there are relevant differences, there is a conflict, and the court must "examine the governmental policies underlying each law, and classify the conflict as a 'true,' 'false,' or an 'unprovided-for' situation." *Id.* at 230.  The policy underlying a state's law is relevant only to the extent it is implicated by that state's contacts with the litigation. *Id.* at 232 (finding that, based on the relevant states' contacts with the parties, "both states' interests are implicated on the facts of this case").[4]

A true conflict exists "when the governmental interests of both jurisdictions would be impaired if their law were not applied." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 n. 15 (3d Cir.1991) (emphasis in original).  If there is a true conflict, the court should apply the "law of the state having the most significant contacts or relationships with the particular issue." *Garcia*, 421 F.3d at 220 (citation omitted).  "This analysis requires more than a 'mere counting of contacts,'" as the court "must weigh the contacts on a qualitative scale according to their relation to the

---

[4] With respect to actions in tort, the relevant contacts are distilled from Restatement (Second) of Conflict of Laws § 145(2)(a)-(d) (1971), and include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *See Hammersmith*, 480 F.3d at 232-33 (looking to the Restatement (Second) of Conflict of Laws to determine the relevant contacts for Pennsylvania's choice of law analysis); *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 689 (3d Cir.1989) (same).

policies and interests underlying the particular issue." *Hammersmith*, 480 F.3d at 231 (citations and alteration omitted). A false conflict exists when "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey*, 932 F.2d at 187. If there is a false conflict, the court should apply the law of the only interested jurisdiction. *Id.* Finally, "there are unprovided-for cases in which neither jurisdiction's interests would be impaired if its laws are not applied." *Garcia*, 421 F.3d at 220. In that case, the court should apply "[t]he principle of *lex loci delicti*, the law of the place of the wrong." *Id.*

Taking their lead from the *Griffith* decision, courts applying Pennsylvania choice of law analysis employ the principle of "depecage," the practice of analyzing each issue separately to determine which state's law applies. *See Griffith*, 416 Pa. at 21 (adopting "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court"); *Taylor v. Mooney Aircraft Corp.*, 430 F. Supp. 2d 417, 421 (E.D.Pa. 2006) (Pennsylvania choice of law analysis is issue-specific); *Berg Chilling Ssytems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (assuming that Pennsylvania's choice of law analysis employs depecage). Accordingly, this brief applies Pennsylvania choice of law analysis on a claim-by-claim basis.

Movants' choice of law analysis ignores established case law. Although Movants do not address whether actual, false or "unprovided-for "conflicts exist, they appear to concede that the interests of California would be impaired upon application of Pennsylvania law. Motion, p. 7 (acknowledging California's "interest in this litigation"). The Motion proceeds to assume, in conclusory fashion, that Pennsylvania law (exclusively) governs CM's claims for intentional interference (Counterclaims III and IV), as well as to unjust enrichment (Counterclaim VII), based on its assertion that there is no difference between the substantive laws of the respective states. Motion, pp. 7-8. As to CM's counterclaims for conversion and violation of Calif. Bus. & Prof. Code § 17200 (West 2008) (Counterclaims V and VI), purport to analyze relevant contacts to Pennsylvania and California, ignoring the fact that no relevant contacts whatsoever have been shown between three of the four counterdefendants, on the one hand, and the Commonwealth of Pennsylvania, on the other, and assuming the sole relevance of Pennsylvania as the place "where a

significant amount of the negotiations and performance of the Agreement occurred" and the false assertion that "[CM] itself alleges that Pennsylvania is where ClubCom breached the Agreement." Motion, pp. 8-9.  However, CM's counterclaims are not for breach of the underlying contract (in which case Delaware law would apply).  Accordingly, to the extent that a "true conflict" exists, a more systematic review of the "relevant contacts" is necessary.

**III.   IN THE EVENT OF ANY "TRUE CONFLICT" OF LAW, THE RELEVANT CONTACTS SET FORTH IN THE FAC STRONGLY FAVOR APPLICATION OF CALIFORNIA LAW.**

Since the Motion has been brought under F.R.C.P. 12(b)(6), unless a defense is apparent from matters of which the court can take judicial notice, the only material that can be considered are the facts and allegations contained in the FAC, or documents (such as the Agreement) attached or referred to therein.  *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1425 (3d Cir. 1997) (on Rule 12 motions, courts "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based.").

With respect to Counterclaims III-VIII and X, Movants acknowledge that California and Pennsylvania are the only states with interests in the litigation.  Motion, p. 7.  Weighed on the "qualitative scale" standard used in Pennsylvania choice of law analysis, these contacts tip heavily toward California.  *See Hammersmith*, 480 F.3d at 231.  This is because the alleged wrongs underlying CM's tort claims: (1) were committed by multiple tortfeasors (only one of which is alleged to have a primary relationship to Pennsylvania); (2) occurred entirely or partially in California (or in an unspecified and unknown jurisdiction); and, most importantly, (3) were committed against a California corporation with its principal place of business in California.

As a preliminary matter, CM notes that with respect to the counterclaims there is nothing in the record, with respect to any of the Counterdefendants other than ClubCom, linking them to the Commonwealth of Pennsylvania.  Counterdefendant Precor is a Delaware corporation with a principal place of business in the State of Washington.  FAC, ¶ 14.  Counterdefendant AmerCo is a Delaware corporation with a principal place of business in the State of Illinois.  FAC, ¶ 13. Counterdefendant AmerOyj is a Finnish multinational corporation.  FAC, ¶ 12.  Only ClubCom

(which is headquartered in the State of Washington) has a direct relationship to Pennsylvania, where it maintains its principal place of business.  FAC, ¶ 15.  Thus, the only relationship that any of the counterdefendants has been shown or alleged to have with Pennsylvania is participation in a number of wrongful acts with a Pennsylvania company (ClubCom).  FAC, ¶ 16.

Second, the vast majority of the acts underlying CM's tort claims took place entirely or partially in California, or in unspecified and unknown jurisdictions.  For example, as alleged in the FAC, an executive from Precor and AmerOyj informed CM that he was considering selling ClubCom due to its poor performance.  FAC, ¶ 46.  ClubCom subsequently proposed to CM that the two companies sell their assets jointly.  FAC, ¶ 46.  ClubCom responded by proposing a meeting in Marina del Rey, California.  FAC, ¶ 46.  That meeting took place in Marina del Rey, and was attended by ClubCom, its investment banker and the company's digital consultant.  FAC, ¶ 46.  At the Marina del Rey meeting, ClubCom admitted that it faced financial constraints due to its relationship with AmerOyj and that AmerOyj had refused to provided the capital necessary for ClubCom's expansion.  FAC, ¶ 46.  At various other times, a Precor/AmerOyj executive confirmed that ClubCom's capital expansion funds were dependent upon AmerOyj.  FAC, ¶ 46.  Counterdefendants proceeded to conduct secret merger discussions with CM's primary digital competitor.  FAC, ¶ 47.  While CM was exploring strategic investment, it offered to introduce ClubCom to its investment banker to help the company find a buyer and, in fact, arranged a conference call to that effect.  FAC, ¶ 48.  Counterdefendants then hatched a scheme to make a pretextual claim of contract breach in order to disrupt CM's economic relationships and extort money.  FAC, ¶ 48.  Accordingly, on November 14, 2007, AmerCo's general counsel sent a letter to CM, on AmerCo letterhead, purporting the terminate the relationship between CM and ClubCom on pretextual grounds.  FAC, ¶ 49.  CM was unable to realize the full enterprise value of its assets and counterdefendants converted more than $900,000 of an advance that CM had provided ClubCom.  FAC, ¶¶ 53, 78-80.  None of these actions is alleged to have taken place in Pennsylvania, nor is there any reasonable basis to assume that any of them took place exclusively within Pennsylvania (i.e., any relevant telephone conversation or email to or from Pennsylvania

would likely have involved another jurisdiction, including California).

Third, the wrongs alleged were to the sole detriment of CM, a California corporation, with its principal place of business in Encino, California.  FAC, ¶ 11.

The relevant contacts set forth above, weighed on the qualitative scale, strongly favor application of California law in the event that the Court finds a "true conflict" with respect to any claim (or any other issue).

**IV.**   **IF MOVANTS' PORTRAYAL OF PENNSYLVANIA LAW RESPECTING COUNTS 3 THROUGH 10 WERE ACCURATE, IT WOULD RESULT IN A "FALSE CONFLICT" REQUIRING THE APPLICATION OF CALIFORNIA LAW**

As the court will see in Sections V – XII, *infra*, CM contends that Movants have inaccurately described Pennsylvania law respecting interference with contractual relations, interference with prospective advantage, conversion, statutory unfair competition, unjust enrichment, accounting, and constructive trust.  However, the claim by Movants that Pennsylvania law would deny any recovery to CM on these claims is in stark contrast with California law, which, as will be discussed, *infra*, would allow recovery on the facts and law as pled.  *see, e.g., Quelimane Co. v. Stewart Title Guaranty Co.*, 19. Cal.4th 26, 55, 77 Cal.Rptr.2d 709 (1988) (interference with contractual relations); *Witkin*, Summary, "Torts," §§741-750 (interference with prospective advantage); 5 B. *Witkin*, Cal. Procedure, "Pleading" (5th ed. 2008) ("*Witkin*, Procedure"), §702 at 118 (conversion); Stern, *Business & Professions Code 17200 Practice*, Chap. 2 (2006) (statutory unfair competition); *Lectrodryer v. Seoul Bank*, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000) (unjust enrichment); *Witkin*, Procedure §§819-820, at 236 (accounting); *Id.,* §840 at 255; *Weiss v. Marcus*, 51 Cal.App.3d 590, 600, 124 Cal.Rptr. 297 (1975) (constructive trust).

Thus, on Movants' own admission: (1) there is an apparent conflict, since relevant differences exist between California and Pennsylvania law, which differences would affect the disposition of the litigation; (2) application of Pennsylvania law would preclude any recovery to CM, notwithstanding the wrongdoing alleged by CM.  Pennsylvania has no governmental interest in permitting the wrongdoing alleged in the FAC.  However, if (as Movants claim), Pennsylvania

7

law would bar recovery, that law would severely impair California's robust government interest in allowing recovery where a party has damaged and/or taken the property of a California company. Accordingly, <u>only</u> the interest of California would be impaired absent the application of its substantive law.  This is a "false conflict" necessitating the application of California law.  *Lacey, supra*, 932 F.2d at 187.

**V.    CM'S THIRD CLAIM FOR INTERFERENCE WITH CONTRACTUAL RELATIONS STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)**

Under California law, "[t]he elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55, 77 Cal. Rptr. 2d 709 (1988) (citation and quotation marks omitted).

These elements were properly pled by CM, and a sufficient factual basis was alleged. Specifically, CM alleged that: (1) it had valid contracts to sell a significant portion of its assets to a third-party and that it had valid contracts with third-party advertisers and advertising agencies (FAC, ¶¶ 66, 67); (2) that the various counterdefendants had actual knowledge of these agreements (FAC, ¶¶ 66, 67); (3) that the counterdefendants' actions were designed to induce a breach or disruption of the contractual relationship (FAC, ¶¶ 66, 67); that a disruption (FAC, ¶ 66) and breaches occurred (FAC, ¶ 66).  Extensive factual averments in support of these elements are contained in paragraphs 1 though 53 of the FAC.

Further, even if Pennsylvania law were to be applied, the tort was properly pled.  Under Pennsylvania law, "[t]o sustain a cause of action for intentional interference with business relations, it must be alleged that: (1) there is an existing contractual relationship between the plaintiff and a third party; (2) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (3) the defendant was not

8

privileged to act in this manner; and (4) the plaintiff suffered pecuniary loss as a result of the breach of contract." *Al Hamilton Contracting Co. v. Cowder*, 434 Pa. Super. 491, 497, 644 A.2d 188 (1994) (citations omitted). Where defendants use corporate formalities to present themselves as distinct entities, they will be regarded as separate entities for purposes of this tort. *Shared Communications Services of 1800-80 JFK Blvd. Inc. v. Bell Atlantic Properties Inc.*, 692 A.2d 570, 574-75 (Pa. Super. 1997). Accordingly, a corporate parent or sibling that directs an affiliate to abrogate its contractual relations will not be shielded from liability. *Id.*

With respect to this counterclaim (and Counterclaims IV-VII, as well), Movants argue that CM has simply re-cast its breach of contract claims as torts and that they are thus barred under Pennsylvania's "gist of the action" doctrine. This is merely a "straw man" argument drawn from their attempted re-write of the FAC. For example, Movants assert that the tortious interference alleged by CM is based upon "with its efforts to market, promote and sell the ClubCom Network to advertisers and health clubs ..." Motion, p. 11. That simply is not the case. For purposes of a 12(b)(6) motion, the relevant facts are those alleged in the counterclaim, not the defendant's characterization of them, and each of CM's tort and equitable claims reasonably alleges that duties breached by counterdefendants was of a type imposed on members of society as a matter of social policy, and thus may not be barred under the "gist of the action" doctrine. *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 104 (3d Cir.Pa. 2001).

The "gist of the action" doctrine simply does not apply to Precor, AmerCo or AmerOyj since (although they are third-party beneficiaries) none of them were parties to the Agreement between CM and ClubCom. Thus, any and all duties that they owe to CM arise from social policy and not from contract. *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa.Super. 2002 ) (discussing "gist of the action" doctrine and explaining that "[t]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus") (citations and internal marks omitted).

Moreover, notwithstanding Movants' re-write of CM's Counterclaim, CM's tort claims are

not based upon "failing to place advertisements [CM] had sold on the ClubCom Network, failing to facilitate [CM's] efforts to install and promote the ClubCom Network in health clubs, and cutting off [CM's] access to portions of the ClubCom website ..."  Motion, p. 11.  To the contrary, the FAC alleges that ClubCom, in collaboration with the other counterdefendants, acted in order to disrupt CM's asset acquisition and pressure CM to acquire its business.  The FAC further alleges that ClubCom, in collaboration with the other counterdefendants, also took affirmative steps not simply to terminate its own Agreement with CM, but (now seeing itself as CM's business competitor) to actively interfere with CM's long-standing relations with its advertisers and advertising agencies.  *Bohler-Uddeholm Am.*, 247 F.3d at 104-05 (breach of fiduciary duty claim nor barred by "gist of the action" doctrine, even where there is a contract between the parties, as fiduciary duties are separate and distinct from the contractual duties set forth in underlying agreement).

If (as Movants claim), Pennsylvania law would bar recovery, California's robust government interests in protecting its citizens from the wrongdoing alleged in the FAC, and in deterring such conduct, would be severely impaired.  *See* Cal. Civ.Code § 1714(a) (West 2008) ("Everyone is responsible, not only for the result of his or her willful acts, but also for [acts of negligence], except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself."); *Wilson v. Blue Cross of So. California*, 222 Cal. App. 3d 660, 665-66, 271 Cal.Rptr. 876 (1990) ("in the absence of statutory provision [sic] declaring an exception to the fundamental principle enunciated by section 1714 of the Civil Code, no such exception shall be made unless clearly supported by public policy") (citation and internal marks omitted).  Accordingly, only the interests of California would be impaired absent the application of its substantive law regarding the intentional interference with contractual relations tort.  This is a "false conflict" necessitating the application of California law.  *Lacey, supra*, 932 F.2d at 187.[5]

---

[5] As set forth above, should the Court determine that a "true conflict" exists between California and Pennsylvania law, as to this or any other of CM's counterclaims, the relevant contacts described in the FAC strongly favor application of California law.

VI. **CM'S FOURTH CLAIM FOR INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)**

To state a claim for the tort of intentional interference with prospective economic advantage, under California law, a plaintiff must plead: (1) an economic relationship between the plaintiff and a third party containing a probable future economic benefit or advantage to plaintiff; (2) defendant's knowledge of the relationship; (3) that the defendant engaged in wrongful conduct designed to interfere with or disrupt this relationship; (4) that the defendant did so with the intent to interfere with or disrupt this relationship, or with the knowledge that the interference or disruption was certain or substantially certain to occur as a result of his/her action; (5) that the economic relationship was actually interfered with or disrupted; and (6) that the wrongful conduct of the defendant which was designed to interfere with or disrupt this relationship caused damage to the plaintiff.  5 B. Witkin, *Summary of California Law* "Torts," §§ 741-750 at 1069-1086 (10th ed. 2005) ("Witkin *Summary*"); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153, 131 Cal. Rptr. 2d 29 (2003); *Buckaloo v. Johnson*, 14 Cal. 3d 815, 827, 122 Cal. Rptr. 745 (1975).  These elements were properly pled by CM, and a sufficient factual basis was alleged. FAC, ¶¶ 70-76 (elements), ¶¶ 1-53 (factual basis).

Pennsylvania does not recognize a tort for "intentional interference with prospective economic advantage," but does apply its "intentional interference with contractual relations" tort to prospective contracts.[6]  Thus, to plead a claim for intentional interference with prospective contractual relations, a plaintiff must plead: "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct."  *Ruffing v. 84 Lumber Co.*, 410 Pa. Super. 459, 467, 600 A.2d 545 (1991) (citation omitted).  Even on application of Pennsylvania law, CM sufficiently pled a claim for recovery under this tort.

---

[6] Pennsylvania's tort is thus indisputably narrower than the California law in the recovery it affords plaintiffs.  See also Motion, p. 9 n. 6.

Movants do not differentiate between the two torts of "intentional interference with contractual relations" and "international interference with prospective economic advantage." Movants arguments are thus deficient for the reasons set forth in Section IV, *supra*.

Movants have inaccurately stated Pennsylvania law.  Nevertheless, Movants' representation that Pennsylvania law would deny any recovery to CM results in a "false conflict" necessitating the application of California law.  *Lacey, supra*, 932 F.2d at 187; *see* Section IV.

## VII.   CM'S FIFTH CLAIM FOR CONVERSION STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)

To state a claim for the tort of conversion, under California law, a plaintiff must plead: (1) ownership or right to possession of tangible property at the time of the conversion; (2) the defendant's conversion; (3) damages. *Witkin*, Procedure § 702, at 118.  Where money is the subject of conversion, the plaintiff must also plead that a specific identifiable sum was taken. *Id.* Where a defendant was originally in lawful possession of property, a plaintiff may ordinarily be required to show that a demand was refused.  *Flennaugh v. Heinrich*, 89 Cal. App. 2d 214, 222, 200 P.2d 580 (1948).  However a demand is not required where it would be futile.  *Scott's V. F. Exch. v. Growers Refrigeration. Co.*, 81 Cal. App. 2d 437, 450, 184 P.2d 183 (1947), *disapproved on other grounds*, *Hischemoeller v. Nat. Ice etc. Storage Co.*, 46 Cal. 2d 318, 328, 294 P.2d 433 (1956).  Similarly, no demand is required when defendant's conduct clearly evidences a conversion.  *Metzler v. Foster Holding Co.*, 5 Cal. 2d 278, 282, 54 P.2d 447 (1936) (property sold or consumed); *Coy v. E. F. Hutton & Co.*, 44 Cal. App. 2d 386, 390, 112 P.2d 639 (1941) (securities in question sold by defendant).  These elements were properly pled by CM, and a sufficient factual basis was alleged.  FAC, ¶¶ 77-83 (elements), ¶¶ 1-53 (factual basis).

Further, even if Pennsylvania law were to be applied, conversion was properly pled. Under Pennsylvania law, conversion is an act by which the tortfeasor deprives a person of his/her right of property in, or possession of, or use of a chattel, without lawful justification and without the owner's consent. *Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 435 Pa. 57, 60, 254 A.2d 637, 638 (1969); *Eisenhauer v. Clock Towers Assoc.*, 399 Pa. Super. 238, 243, 582 A.2d 33

(1990) (citations omitted).  Pennsylvania law is also quite clear that the "demand requirement" is not a pleading issue appropriate for a 12(b)(6) motion; the "requirement" is not fixed in stone and its applicability to a particular claim depends upon the evidence developed through discovery. "Absence of a demand is not controlling where the element of actual misapplication is made out by other evidence." *Commonwealth v. Spiegel*, 169 Pa. Super. 252, 255, 82 A.2d 692 (1951) (internal quotation omitted) (construing criminal conversion); *Commonwealth v. Cygan*, 212 Pa. Super. 384, 388, 243 A.2d 476 (1968) (same).  In fact, the very authority cited by Movants clearly excuses a demand upon a showing of "circumstances indicating misapplication or an intent to exercise dominion adverse to the owner, ...' *Norriton*, 435 Pa. at 61.

While the claim is properly pled under the laws of either jurisdiction, Movants infuse their 12(b)(6) Motion with argument about the underlying merits of the case.  First, they argue that because CM gave the $1 million Advance to Counterdefendants in accordance with a contract with ClubCom, no conversion can be pled as any duties that the Counterdefendants have, with regard to CM's funds, are inherently contractual in nature and thus barred by Pennsylvania's "gist of the action" doctrine.

However, as detailed above, under California and Pennsylvania law a conversion can arise where the converter initially has lawful possession of the property, but then converts.  In fact, the case law cited by Movants is instructive on the distinction between breach of contract (to which Pennsylvania's "gist of the action" doctrine applies) and conversion.  *Pittsburgh Construction Co. v. Griffith*, 834 A.2d 572 (Pa. Super. Ct.2003), for example, arose from a home construction contract.  The homeowners objected to the quality and sufficiency of the work performed under the contract and withheld the final two contractual payments from an escrow account, asserting that the construction company had breached the contract and that the cost of repairing the resulting defects would exceed the amount of the final two payments.  *Id.*  While the construction company claimed tortious conversion on the basis of these facts, the court held that the "tort and breach of contract claims [were] inextricably intertwined [and that] the success of the conversion claim depend[ed] entirely on the obligations as defined by the contract." *Id.* at 584.  As a result,

13

the "gist of the action doctrine" barred the claim for conversion.  *Id.*  On a different set of facts, containing the same actors but directly analogous to this case, a claim for conversion could have been asserted.  Had the homeowners given the contractor an advance of $900,000 and then the contractor had walked away, claiming that he had no obligation to return the homeowner's funds, a claim for conversion could have been pled.  In Movants' *Pittsburgh Construction* case, a conversion claim failed where the defendant declined to convey possession to funds owed by virtue of a contract.  Here, however, Counterdefendant ClubCom initially obtained CM's funds legally, pursuant to a contract, then -- in concert with the other counterdefendants -- converted these funds by exercising dominion adversely to CM.  FAC, ¶¶ 77-83

Through their own polemics about the underlying case, Movants actually underscore the applicability of a conversion claim.  As Movants (falsely) claim, "the Agreement does not require ClubCom to return" the Advance.  Motion, p. 16.  Thus, it is Movants' stated position that, once CM conveyed the Advance to ClubCom, CM no longer had any contractual right to it.  Although CM regards as specious Movants' position that ClubCom was entitled by law to terminate the Agreement when they deemed fit and simply pocket the Advance, Movants must nevertheless be charged with the admission that the conversion of the Advance (as alleged by CM) falls outside the four corners of the Agreement.  Accordingly, by Movants' own admission, their conduct, with respect to the conversion claim, is not based upon any duties arising from contract and, accordingly, the "gist of the action" doctrine simply does not apply.

Movants' second argument is that CM did not plead that the Agreement bars ClubCom from absconding with the $907,916.13 of CM's funds identified in the FAC.  However, the claim is for conversion, not breach of contract; CM properly alleged that Counterdefendants have converted its funds.  FAC, ¶¶ 77-83.

Third, Movants argue that CM's pleading with respect to the "demand requirement" is "circular" and that CM "fails to grasp an essential element of conversion."  Motion, p. 15.  As discussed above, however, its pleading with respect to the "demand requirement" complies with both California and Pennsylvania requirements.  CM even pled ClubCom's affirmative

14

representation that it does not have to repay the money that it took (FAC, ¶ 80) -- a position that Movants have reinforced with the self-negating assertion that, ClubCom was free to take CM's money because nothing in the Agreement explicitly prohibited it.  Motion, p. 16 ("... even if Captive had made a demand, ClubCom's refusal would not have constituted a conversion because the Agreement does not require ClubCom to return the Lump-Sum payment.").

Movants' representation that Pennsylvania law would deny any recovery to CM results in a "false conflict" necessitating the application of California law.  *Lacey*, 932 F.2d at 187; *see* Section IV, *supra*.

**VIII.  CM'S SIXTH CLAIM FOR VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200 STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW**

California Unfair Competition Law ("UCL"), set forth at Bus. & Prof. Code §17200 (West 2008), prohibits five different forms of conduct: (1) any unlawful business act or practice; (2) any unfair business act or practice; (3) any fraudulent business act or practice; (4) any unfair, deceptive, untrue or misleading advertising; and, (5) any act prohibited by Bus. & Prof. Code §§ 17500-17577.5.  Cal. Bus. & Prof. Code § 17200.  As California's Supreme Court has observed, Section 17200's list of prohibited activities is disjunctive.  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548 (1999) (superseded by statute on other grounds); *Committee on Children's Television v. General Foods Corp.*, 35 Cal. 3d 197, 210, 197 Cal. Rptr. 783 (1983) (same).  A claim under Section 17200 may be brought by "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition."  Cal. Bus. & Prof. Code § 17204.  CM has properly pled a claim under Section 17200, alleging that it has suffered injury in fact as a result of Counterdefendants' unfair business practices, and a sufficient factual basis was alleged.  FAC, ¶¶ 84-87 (elements), ¶¶ 1-53 (factual basis).

California's UCL differs substantially from the consumer protection statutes and unfair competition laws in every other state, and there is no comparable law in Pennsylvania. California's UCL dates to 1933 is generally regarded as the broadest such state law.  Stern, *Bus. &*

*Prof. Code* § 1:2, at 1-1.  Pennsylvania, by contrast, has adopted one of three "alternative" model acts prepared by the FTC in the late 1960s.  *Id.* at §§ 2:55, 2:58, at 2-19, 2-20.  Pennsylvania's law, the Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.* declares 21 specific acts to be "unlawful" and authorizes the attorney general to formulate regulations and seek injunctions and civil penalties.  *Id.*

Although Pennsylvania has no comparable statute, Movants insist that the claim should be dismissed because, if Pennsylvania did have a law like California's, its application would be barred because there is a contract between CM and one of the Movants.  Motion, p. 16.  This counterfactual argument is a *non sequitur.*

Movants then proceed to misstate California law and the FAC.  First, citing an indirect quotation from a passage of a California Supreme Court decision underscoring the expansive nature of Cal. Bus. & Prof. Code § 17200, Movants argue at great length, that "[a]n essential element of a Section 17200 claim is that 'members of the public are likely to be deceived.'" Motion, p. 17.  Simply put, that is not the law in California -- not now nor at any time since the legislature enacted California's UCL.  *See generally* Stern, *Bus. & Prof. Code,* Chap. 2 ("Historical Origins").  Next, Movants assert that "Section 17200 provides no remedy to [CM]." Motion, p. 17.  In fact, the text of the statute expressly provides for restitution, and CM's prayer seeks the restitutionary disgorgement permissible under the act.  Cal. Bus. & Prof. Code § 17203; *Matoff v. Brinker Restaurant Corp.*, 439 F. Supp. 2d 1035, 1038-39 (C.D.Cal. 2006).  Finally, Movants claim that CM does not seek an injunction or any other relief permissible under Bus. & Prof. Code § 17200, *et seq.*  Motion, p. 18 n. 7.  In fact, recognizing the broad "cleansing power" conveyed to courts under California's UCL, CM specifically seeks injunctive relief, and for "such other and further relief the Court deems just and proper."  FAC, Prayer, pp. 24-26; *Fletcher v. Security Pacific National Bank*, 23 Cal. 3d 442, 153 Cal. Rptr. 28 (1979) (Supreme Court discussion of broad court "cleansing power to order restitution to effect complete justice" of § 17535); *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 & n. 10, 96 Cal. Rptr. 2d 518 (2000) (same, observing that restitutionary language of § 17535 and § 17203 is

identical).

In light of the fact that Pennsylvania has no statute comparable to Cal. Bus. & Prof. Code § 17200, *et seq.*, CM's only unfair competition remedy is under California law.  Moreover, California's stated interest in "protect[ing] California businesses and consumers from unlawful, unfair and fraudulent business practices" has now been enunciated by "the people of California" through a popular referendum.  Cal. Prop. 64, §1(a) (available at: http://vote2004.sos.ca.gov/voterguide/propositions/prop64text.pdf ) (first of eight "Findings and Declarations of Purpose").  Accordingly, <u>only</u> the interests of California would be impaired absent the application of its substantive unfair competition law.  This is a "false conflict" necessitating the application of California law.  *Lacey*, 932 F.2d at 187; *see* Section IV, *supra*.

## IX.    CM'S SEVENTH CLAIM FOR UNJUST ENRICHMENT STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)

Under California law, the elements of an unjust enrichment claim are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another."  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881 (2000).  These elements were properly pled by CM, and a sufficient factual basis was alleged.  FAC, ¶¶ 88-89 (elements), ¶¶ 1-53 (factual basis).

Further, even if Pennsylvania law were to be applied, a claim for unjust enrichment was properly pled.[7]  Under Pennsylvania law, "to sustain a claim of unjust enrichment, the claimant must show that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider."  *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir.1987) (citing *Torchia on behalf of Torchia v. Torchia,* 346 Pa. Super. 229, 499 A.2d 581 (1985)).

In seeking to have this claim dismissed, Movants reiterate their arguments that, because

---

[7] In a footnote, Movants claim CM failed to please unjust enrichment and other counterclaims in the alternative.  See Motion, p. 18 n. 8.  Under the federal rules, no "alternative theory" language is required in a complaint.  Fed. R. Civ. P. 8(d)(3); *Independent Enterprises Inc. v. Pittsburgh Water & Sewer Authority*, 103 F.3d 1165, 1175 (3d Cir. 1997).

the claim arises from a written contract, an equitable claim is barred.  For the same reasons that

the "gist of the action" doctrine does not apply, Movants' arguments here are deficient.

Even if Pennsylvania law would deny any recovery to CM, it would contrast starkly with

California law, which would allow recovery on the facts and law as pled.  *Lectrodryer*, 77 Cal.

App. 4th at 726.  This is a "false conflict" necessitating the application of California law.  *Lacey*,

932 F.2d at 187; *see* Section IV, *supra*.

## X.   CM'S EIGHTH CLAIM FOR AN ACCOUNTING STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)

Under California law, a claim for accounting is a valid cause of action.  Witkin *Procedure*

"Pleading" § 819, at 236. To state a claim for an accounting, a plaintiff must plead: (1) a fiduciary

relationship of other circumstances appropriate to the remedy; and, (2) that a balance is due the

plaintiff that can only be determined.  *Id.* at § 820, p. 236.  Both elements were properly pled by

CM, and a sufficient factual basis was alleged.  FAC, ¶¶ 90-92 (elements), ¶¶ 1-53 (factual basis).

Further, even if Pennsylvania law were to be applied, an action for accounting was

properly pled.  Under Pennsylvania law, a claim for an equitable accounting requires a showing of

a fiduciary relationship or other special between the parties, misrepresentation or fraud, mutual or

complicated accounts (or other basis for discovery), and lack of an adequate legal remedy.  *Meier*

*v. Maleski*, 167 Pa. Commw. Ct. 458, 481-83 & n. 21-23, 648 A.2d 595 (1994); *Buczek v. First*

*National Bank of Mifflintown*, 366 Pa. Super. 551, 531 A.2d 1122 (1987).  However, as

Pennsylvania's Supreme Court has counseled, leniency is required for pleading purposes since, at

the outset of an accounting suit, "often times it is not certain what claims a plaintiff may have

until the accounting is completed."  *In re Estate of Hall*, 517 Pa. 115, 136, 535 A.2d 47 (1987).

Movants cite an unreported case in which a federal court dismissed an accounting claim by

labeling it a remedy, not a cause of action.  Motion, p. 19 (citing *In re American Investors Life Ins.*

*Co.*, No. 04-2535, 2007 U.S. Dist. LEXIS 64967 (E.D.Pa. Aug. 29, 2007) (in Westlaw database at

2007 WL 2541216).  Obviously, this is inconsistent with the Pennsylvania state law cited above.

Even if Pennsylvania law would deny an equitable accounting to CM, it contrasts with

California law, which would allow an accounting.  Witkin *Procedure* "Pleading," §§ 819-820, at 236.  *See* Cal. Civ. Code § 1714(a); *Wilson*, 222 Cal. App. 3d at 665-66.  This is a "false conflict" necessitating the application of California law.  *Lacey*, 932 F.2d at 187; *see* Section IV, *supra*.

XI.   **CM'S NINTH CLAIM FOR DECLARATORY RELIEF STATES A CLAIM UNDER THE RELEVANT DELAWARE LAW**

Although the underlying agreement "was styled as an agreement between CM and ClubCom, it contained numerous provisions for the express benefit of AmerOyj (and its 'affiliates,' including AmerCo) and Precor."  FAC, ¶ 24 (with provisions enumerated).  With each of the Counterdefendants as a third-party beneficiary, prudent pleading practice will ensure that the preclusive effective of declaratory relief extends to them, as well.  Accordingly, with respect to the underlying contract, CM seeks declaratory relief as to each of the Counterdefendants (and not simply ClubCom), and has properly pled an "actual controversy" within the meaning of Delaware's Declaratory Judgment Act, Del. Code Ann. tit. 10 § 6501 ("Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed.").  FAC, ¶¶ 93-96 (elements), ¶¶ 1-53 (factual basis).

Movants agree with CM that its Ninth Counterclaim (Declaratory Relief) should be construed under Delaware law.  Motion, p. 6 n. 3.  It is thus unclear why Movants rely exclusively upon Pennsylvania decisions to argue that the claim should be dismissed as to all Movants but ClubCom.  Motion, pp. 19-20.  On Movants' own admission, Pennsylvania law is not germane to the claim.  Accordingly, the Motion should be denied with respect to this count.

XII.  **CM'S TENTH CLAIM FOR IMPOSITION OF A CONSTRUCTIVE TRUST STATES A CLAIM UNDER THE RELEVANT CALIFORNIA LAW (AND, IN THE ALTERNATIVE, UNDER PENNSYLVANIA LAW)**

Under California law, a claim for a constructive trust is valid.  Witkin, *Procedure, Pleading* § 840, at 255.  To state a claim for a constructive trust, a plaintiff must plead: (1) facts supporting an underlying cause of action; and, (2) the existence of specifically identifiable property.  *Id.* at 255-56.  Both elements were properly pled by CM, and a sufficient factual basis

was alleged.  FAC, ¶¶ 97-99 (elements), ¶¶ 1-53 (factual basis).

Further, even if Pennsylvania law were to be applied, a claim for a constructive trust was properly pled.  Under Pennsylvania law, "a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Gray v. Leibert*, 357 Pa. 130, 135, 53 A.2d 132 (1947) (citation and internal quotation marks omitted*); Roberson v. Davis*, 397 Pa. Super. 292, 296, 580 A.2d 39 (1990) (same).

Movants' argue that a claim for a constructive trust is invalid, citing as their sole authority a Philadelphia trial court ruling allowing a claim for a constructive trust to proceed!  Motion, 19 (citing *Romy v. Burke*, No. 1236, 2003 Phila. Ct. Com. Pl. LEXIS 67, at *13-5 (2003) (in Westlaw database at 2003 WL 21205975, with claim for constructive trust recognized at *5).

Even if Pennsylvania law would deny any recovery to CM, it contrasts with California law, which would allow recovery.  Witkin *Procedure* Pleading § 840, at 255; *Weiss v. Marcus,* 51 Cal.App.3d 590, 600, 124 Cal.Rptr. 297 (1975) ("a constructive trust may be imposed in practically any case where there is a wrongful acquisition or detention of property to which another is entitled").  This is a "false conflict" necessitating the application of California law. *Lacey*, 932 F.2d at 187; *see* Section IV, *supra*.

## XIII.   CONCLUSION

With respect to 12(b)(6)motions, "[a]ll federal courts are in agreement that the burden is on the moving party to prove that no legally cognizable claim for relief exists."  Wright & Miller, § 1357, at 456, 462.  For the reasons stated, the Motion should be denied.  Nevertheless, to the extent that the court finds merit with any of Movants' assertions, CM respectfully requests that it be granted leave to amend the FAC under Fed. R. Civ. P. Rule 15(a). *Shane v. Fauver*, 213 F.3d 113, 115 (3d. Cir. 2000) ("[I]f a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency.").

Dated:  September 15, 2008

STRASSBURGER McKENNA GUTNICK &
GEFSKY


By: _David A. Strassburger_____
    David A. Strassburger
    Pa. I.D. No. 76027

    Four Gateway Center, Suite 2200
    444 Liberty Avenue
    Pittsburgh, PA 15222
    (412) 281-5423

    Counsel for Defendant and
    Counterclaimant

Louis P. Petrich
Vincent Cox
Thomas J. Peistrup
Leopold, Petrich & Smith, P.C.
2049 Century Park East, Suite 3110
Los Angeles, California  90067
Tel:   (310) 277-3333
Fax:  (310) 2777-7444
Email:  lpetrich@lpsla.com
        vcox@lpsla.com
Attorneys for CM SHAREHOLDER
HOLDINGS, INC., f/k/a CAPTIVE MEDIA,
INC.

## CERTIFICATE OF SERVICE

I, David A. Strassburger, an attorney, certify that I caused a copy of the foregoing

**OPPOSITION BY DEFENDANT AND COUNTERCLAIMANT CM SHAREHOLDER**

**HOLDINGS, INC., f/k/a/ CAPTIVE MEDIA, INC. TO CLUBCOM'S AND PRECOR'S**

**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS**

**III THROUGH X OF CAPTIVE'S FIRST AMENDED COUNTERCLAIM**  to be served

this 15th day of September, 2008 by electronic mail and

<u>Federal Express</u>:

        Louis S. Chronowski, Esq.
        SEYFARTH SHAW LLP
        131 S. Dearborn Street, Suite 2400
        Chicago, Illinois  60603
        Email: LChronowski@seyfarth.com

<u>Hand Delivery</u>:

        Susan A. Yohe, Esquire
        Buchanan Ingersoll & Rooney
        One Oxford Centre
        301 Grant Street, 20th Floor
        Pittsburgh, PA  15219-1410
        yohesa@bipc.com

        /s/ David A. Strassburger
        David A. Strassburger