**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CLUBCOM, INC.,                              )
                                            )
              Plaintiff,           )
                                            )
        v.                   )       02: 07-cv-1462
                                            )
CAPTIVE MEDIA, INC., d/b/a HEALTH           )
CLUB PANEL NETWORK,                         )
                                            )
              Defendant.           )

---

CM SHAREHOLDER HOLDINGS, INC.,              )
f/k/a/ CAPTIVE MEDIA, INC.,                 )
d/b/a HEALTH CLUB PANEL NETWORK,            )
a California Corporation,                   )
                                            )
              Counterclaim Plaintiff,   )
                                            )
        v.                   )       02: 07-cv-1462
                                            )
CLUBCOM, INC., a Delaware Corporation;      )
PRECOR, INC., a Delaware Corporation;       )
AMER SPORTS COMPANY, a Delaware             )
Corporation; and AMER SPORTS OYJ a/k/a      )
AMER SPORTS CORPORATION, organized          )
under the laws of Finland,                  )
                                            )
              Counterclaim Defendants.   )

**MEMORANDUM OPINION AND ORDER**

January 31, 2009

      Presently before the Court are the following motions:

      •    MOTION TO DISMISS COUNTS III THROUGH X OF CAPTIVE'S FIRST

AMENDED COUNTERCLAIM, with brief in support, filed by Counterclaim Defendants

ClubCom, Inc. ("ClubCom") and Precor, Inc. ("Precor) (Document Nos. 36 and 37),[1] the brief

in opposition filed by CM Shareholder Holdings, Inc., f/k/a Captive Media, Inc. ("Captive

Media) (Document No. 44), and the REPLY BRIEF filed by ClubCom and Precor (Document

No. 52);

> • MOTION TO DISMISS COUNTS THREE THROUGH TEN OF CM

SHAREHOLDER HOLDINGS, INC.'S FIRST AMENDED COUNTERCLAIM, PURSUANT

TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(5), OR, IN THE

ALTERNATIVE, FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), with brief in support,

filed by Amer Sports Oyj ("Amer Oyj") (Document Nos. 59 and 60),  the brief in opposition

filed by Captive Media (Document No. 68), and the REPLY BRIEF filed by Amer Oyj

(Document No. 73); and

> • MOTION TO DENY COUNTERDEFENDANT AMER SPORTS OYJ

A/K/A AMER SPORT CORPORATION'S MOTION TO DISMISS, WITHOUT PREJUDICE,

AND ENTER ORDER ALLOWING LIMITED DISCOVERY filed by Captive Media

(Document No. 71) and Brief in Opposition filed by Amer Oyj (Document No. 74).


### FACTUAL AND PROCEDURAL BACKGROUND[2]

Captive Media is a California corporation with its principal place of business in

Encino, California.  (*Id*. at ¶ 11).  Captive Media focuses on indoor billboards, including panels

---

[1]     Counterclaim Defendant Amer Sports Company has joined in the Motion to
Dismiss filed by ClubCom and Precor.  *See* Document No. 41.

[2]     The following facts, which are accepted as true for purposes of this decision, are
taken from the First Amended Counterclaim.

and electronic / digital signage, and marketing activities such as the placement of coupons, branded yoga mats, and other forms of advertisements shown within health clubs. (*Id.*)

Amer Sports Oyj a/k/a Amer Sports Corporation is a Finnish multinational corporation. (*Id.* at ¶ 12). Amer Oyj maintains manufacturing and distribution sites around the world, and markets its products in the United States, through various divisions and/or subsidiaries. (*Id.* at ¶ 12.)

Amer Sports Company ("Amer Sports Co.") is a Delaware corporation with its principal place of business in the State of Illinois. (*Id.* at ¶ 13.) Amer Sports Co. is a wholly-owned subsidiary of AmerOyj.

Precor is a Delaware corporation with its principal place of business in the State of Washington. (*Id.* at ¶ 14.) Precor is a wholly-owned subsidiary of Amer Oyj. Precor markets "high-end" home and commercial fitness equipment through a network of dealers throughout the Untied States and around the world. (*Id.*)

ClubCom is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania. (Counterclaim, ¶ 15.) ClubCom is a wholly-owned subsidiary of Precor and, in turn, of Amer Oyj.[3] ClubCom owns and maintains a digital entertainment network which it broadcasts into health clubs through the United States and the world (the "ClubCom Network"). (*Id.*) ClubCom introduces the ClubCom Network into health clubs and bowling alleys and sells advertising space on the ClubCom Network to national advertisers. (*Id.*, ¶¶ 1, 15, 19.)

---

[3]     According to Amer Oyj, on September 12, 2008, its subsidiary, Amer Sports Co. , sold ClubCom to a third-party. Br. at 2, n.1

In 2004, ClubCom and Captive Media began negotiating an agreement which would allow Captive Media to sell advertising on the ClubCom Network. (*Id*. at ¶ 19.)

ClubCom and Captive Media entered into an agreement on March 7, 2006 (the "License Agreement"). (*Id.*) Under the License Agreement, ClubCom granted Captive Media an exclusive license to sell advertising on the ClubCom Network for a term of ten and one-half years. (*Id.* at ¶¶ 19, 22.) It also granted Captive Media a non-exclusive licence to introduce and promote the ClubCom Network to health clubs. In return, Captive Media agreed to use its best efforts "to market, promote, commercialize and sell [advertisements] over the [ClubCom] Network" and "install, operate and commercialize the [ClubCom] Network" in new facilities and in facilities with which Captive Media had a pre-existing business relationship. (License Agreement, ¶ 2). Captive Media also agreed to "not directly or indirectly compete with ClubCom" in any health club and not to promote or recommend within the fitness industry and network operation products that are competitive with or similar to the ClubCom Network.

On March 8, 2006, ClubCom and Captive Media executed a Letter Agreement which pertained to the facilities of Captive Media. The Letter Agreement incorporated by reference the terms and conditions of the License Agreement and reflected "certain supplemental understandings" with regard to the relationship between ClubCom and Captive Media. (First Amended Counterclaim, at ¶ 27.)

Counterclaim-Defendants Amer Oyj, Amer Sports Co. and Precor are not parties to either the License Agreement or the Letter Agreement which was executed between ClubCom and Captive Media.

After the License Agreement was executed, Captive Media claims to have marketed, promoted and sold advertisements on the ClubCom Network. (First Amended Counterclaim, ¶¶ 34-37.) Captive Media alleges that in 2007, ClubCom and Captive Media discussed selling their assets in a combined sale, that the negotiations were not successful, and that Captive Media and ClubCom subsequently began to explore the possibility of selling their assets separately. (*Id.* at ¶¶ 46-49.) Captive Media further alleges that it was ultimately successful in selling all of its assets which were unrelated to the License Agreement. (*Id*. at ¶¶ 48, 53, 66.)

On November 14, 2007, ClubCom sent a letter to Captive Media in which it informed Captive Media that it considered the parties' relationship terminated because Captive Media was actively promoting a competing product and had failed to use its best efforts to promote the ClubCom Network. (Id. at ¶¶ 48-49.) Thereafter, ClubCom refused to allow Captive Media access to its website, declined to run new advertisements sold by Captive Media, and retained the Lump-Sum Payment which was paid by Captive Media pursuant to the License Agreement.

On November 14, 2007, ClubCom filed a four-count Complaint against Captive Media in which it alleges that Captive Media breached the long term License Agreement of the parties. On May 22, 2008, Captive Media answered the Complaint, and made a counterclaim against ClubCom, Precor, Inc.; and Amer Sports Oyj. On June 27, 2008, Captive Media filed a ten-count First Amended Counterclaim which named Amer Sports Co. as an additional counterclaim defendant.

Counts I and II of the First Amended Counterclaim are directed solely to ClubCom and are based on ClubCom's alleged breach of the License Agreement and Letter Agreement. These claims are not the subject of the pending motions to dismiss.

The remaining eight claims of the First Amended Counterclaim, brought against all of the Counterclaim Defendants, are as follows:

- Count III - Interference with Contractual Relations;

- Count IV - Interference with Prospective Economic Advantage;

- Count V - Conversion;

- Count VI - Violation of California Business and Professions Code Section 17200;

- Count VII - Unjust Enrichment;

- Count VIII - For An Accounting;

- Count IX - Declaratory Relief;

- Count X - Imposition of a Constructive Trust.

All Counterclaim Defendants have moved to dismiss Counts III through X. The motions have been fully briefed by all parties and are ripe for disposition. For the reasons that follow, the Motion to Dismiss filed by ClubCom and Precor, and joined by Amer Sports Co., will be granted in its entirety and the Motion to Dismiss filed by Amer Oyj will be granted in its entirety.

**STANDARDS OF REVIEW**

A.      Federal Rule of Civil Procedure 12(b)(6)

ClubCom, Precor, and Amer Sports Co. have brought their motion to dismiss the

First Amended Counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state

a claim upon which relief can be granted. Amer Oyj has brought its motion to dismiss under

Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5), or, in the alternative, 12(b)(6).

Courts use the same standard in ruling on a motion to dismiss a counterclaim under

Federal Rule of Civil Procedure 12(b)(6) as they do for a complaint. *United States v. Union

Gas Co.*, 743 F. Supp. 1144, 1150 (E. D. Pa. 1990). The United States Supreme Court's

opinion in *Bell Atlantic Corp. v. Twombly* has altered the standard of review for a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Phillips v. County of Allegheny*, 515 F.3d 224,

230 (3d Cir. 2008). In construing the Rule 12(b)(6) standard generally, the Supreme Court

requires the plaintiff to provide more than a formulaic recitation of a claim's elements that

amount to mere labels and conclusions. *Twombly*, -- U.S. --, 127 S.Ct. 1955, 1964-65 (2007).

Additionally, the complaint's "factual allegations must be enough to raise a right to relief above

the speculative level." *Id.*

The Court of Appeals for the Third Circuit has held that the language in *Twombly*

applies generally to all motions brought under Rule 12(b)(6). *Phillips,* 515 F.3d at 232.

Despite the seemingly altered standard from *Twombly,* it is still true that "courts accept all

factual allegations as true, construe the complaint in the light most favorable to the [non-

moving party], and determine whether, under any reasonable reading of the complaint, the

plaintiff may be entitled to relief." *Id.* (*quoting Pinker v. Roche Holdings, Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).

B.        Federal Rule of Civil Procedure 12(b)(2)

For the purpose of a 12(b)(2) motion, the Court must accept the counterclaim plaintiff's allegations as true and construe disputed facts in favor of the counterclaim plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); see also *Carteret Savings Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir.), *cert. denied*, 506 U.S. 817 (1992). Nonetheless, a Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66-67 n. 9 (3d Cir. 1984). Furthermore, once a defendant has raised a personal jurisdiction defense, the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met. *Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 482 (3d Cir. 1993). "[Counterclaim] Plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Time Share,* 735 F.2d at 67 n.9 (3rd Cir. 1984). The counterclaim plaintiff must offer evidence that establishes with reasonable particularity the existence of sufficient contacts between the counterclaim defendant and the forum state to support jurisdiction. *See Carteret,* 954 F.2d at 146; *Provident Nat. Bank v. California Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). Although the plaintiff cannot rely solely on the bare pleadings to meet this burden, whatever form of the submissions, the court must accept disputed facts in light most favorable to the plaintiff. *See Carteret*, 954 F.2d at 142 n.1.

When the district court does not " ' hold an evidentiary hearing . . ., the [counterclaim] plaintiff need only establish a prima facie case of personal jurisdiction and the [counterclaim] plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor'." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, No. 05-3288, -- F.3d ---, 2007 WL 2135274 at *2 (3d Cir. July 26, 2007) (*quoting Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

C.        Federal Rule of Civil Procedure 12(b)(5)

A counterclaim defendant may file a motion to dismiss pursuant to Rule 12(b) (5) of the Federal Rules of Civil Procedure when a counterclaim plaintiff fails to properly serve him or her with the summons and complaint. In a Rule 12(b)(5 ) motion, "the party making the service has the burden of demonstrating validity when an objection to the service is made." *Suegart v. U.S. Customs Service*, 180 F.R.D. 276, 278 (E. D. Pa. 1998).

**CHOICE OF LAW**

The resolution of the pending motions to dismiss requires a determination of which law applies to the various claims brought by Captive Media in its First Amended Counterclaim. In determining the applicable law, a court must apply the choice-of-law principles of the state in which the district court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). Because this Court sits in Pennsylvania, the choice of law rules for Pennsylvania govern.

Pennsylvania follows a "flexible [choice of law] rule which permits analysis of the policies and interests underlying the particular issue before the court." *Griffith v. United Air*

*Lines, Inc.*, 203 A.2d 796, 805 (Pa .1964). Under this approach, the Court first must identify

whether there are relevant differences between the laws of the states that would affect the

disposition of the litigation. "If there is no conflict, then the district court sitting in diversity

may refer interchangeably to the laws of the states whose laws potentially apply," *Huber v.*

*Taylor*, 469 F.3d 67, 74 (3d Cir. 2006), and further analysis is not necessary. *Hammersmith v.*

*TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citing *Budtel Assoc., LP v. Continental Cas.*

*Co.*, 915 A.2d 640, 641 (Pa. Super. Ct. 2006)).

  If there is no substantive difference between the laws of the competing states, no real

conflict exists and the forum law applies. *Hammersmith*, 480 F.3d at 230. Where a real

conflict exists, the court moves to the second step and examines the governmental policies

underlying each law in order to classify the conflict as true, false, or an unprovided for

situation. *Id*. at 230. A false conflict occurs where only one state's interests would be impaired,

and the law of the interested state applies. *LeJeune v. Bliss-Salem Inc.*, 85 F.3d 1069, 1071 (3d

Cir. 1996). If there is a false conflict, the court should apply the law of the only interested

jurisdiction. *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir. 1991).

  Where, on the other hand, each jurisdiction has a governmental policy or interest that

would be impaired by the application of the other state's law, a true conflict exists. *Id.* In the

case of a true conflict, the court turns to the third step to "determine which state has the 'greater

interest in the application of its law.' " *Hammersmith,* 480 F.3d at 231 (quoting *Cipolla v.*

*Shaposka*, 267 A.2d 854, 856 (1970)). If there is a true conflict, the court should apply the "law

of the state having the most significant contacts or relationships with the particular issue."

*Garcia v. Plaza Oldsmobile, Ltd.*, 421 F.3d 216, 220 (3d Cir. 2005) (citation omitted). "This

analysis requires more than a 'mere counting of contacts,' " as the court "must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue." *Hammersmith*, 480 F.3d at 231 (citations and alteration omitted).

Finally, "there are unprovided-for cases in which neither jurisdiction's interests would be impaired if its laws are not applied." *Garcia,* 421 F.3d at 220. In that case, the court should apply "[t]he principle of lex loci delicti, the law of the place of the wrong." *Id.*

Although Pennsylvania courts have not explicitly addressed it, the Court of Appeals for the Third Circuit has assumed that Pennsylvania's choice of law analysis employs "depecage," the principle whereby "different states' laws may apply to different issues in a single case." *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (assuming that Pennsylvania's choice of law analysis employs depecage); *see also Broome v. Antlers' Hunting Club*, 595 F.2d 921, 924 (3d Cir. 1979) (predicting that "a Pennsylvania court . . . would consider applying the law of different states to the separate issues of liability and damages"). This assumption is based on the pronouncement in *Griffith* that Pennsylvania's choice of law analysis focuses on "the policies and interests underlying the particular issue before the court." *Griffith,* 203 A.2d at 805. By suggesting that the court must analyze each issue separately, *Griffith* implies that the laws of different states could apply to different issues.

In the instant matter, all parties agree that Delaware law applies to Counterclaims I, II, and IX, as these claims arise either directly from the written contract between ClubCom and Captive Media (Counts I and II) or are ancillary to the written contract (Count IX). The contract between ClubCom and Captive Media contains a valid Delaware choice of law provision.

However, with respect to the remaining Counterclaims, the Counterclaim Defendants argue that Pennsylvania law applies to each, while Captive Media responds that California law applies. Accordingly, as an initial matter, the Court must undertake an independent choice of law analysis to determine the substantive law that applies to Counts III through VII.[4]

A.　　　Count III - Interference with Contractual Relations

Both California and Pennsylvania treat claims for tortious interference with contractual relations as actionable and each state similarly defines the tort elements. Under California law, the elements of a claim for tortious interference with contractual relations are: (i) a valid contract between plaintiff and a third party; (ii) defendant's knowledge of this contract; (iii) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (iv) actual breach or disruption of the contractual relationship; and (v) resulting damage. *Quelimane Co. v. Stewart Title Guaranty Co.*, 960 P.2d 513 (Ca. 1998).

Under Pennsylvania law, the elements of a claim for tortious interference with contractual relations are: (i) there is an existing contractual relationship between the plaintiff and a third party; (ii) the defendant interfered with the performance of that contract by inducing a breach or otherwise causing the third party not to perform; (iii) the defendant was not privileged to act in this manner; and (iv) the plaintiff suffered pecuniary loss as a result of the breach of contract. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 199 (Pa. Super. Ct. 1994).

_____

[4]　　　Counts VIII and X do not require a choice of law analysis as they are not claims, but rather remedies. Count IX is based on the License Agreement and is, therefore, governed by its Delaware choice of law provision.

The Court finds that there is no real conflict as there is no substantive difference between the laws of California and Pennsylvania in regard to claims for interference with contractual relations and, therefore, further analysis is not necessary. *Hammersmith,* 480 F.3d at 230.

B.      Count IV - Interference with Prospective Economic Advantage

Under California law, a plaintiff must establish the following the elements for a claim of intentional interference with prospective advantage,:  (i) an economic relationship between plaintiff and a third party containing a probable future economic benefit or advantage to plaintiff; (ii) defendant's knowledge of the relationship; (iii) that the defendant engaged in wrongful conduct designed to interfere with or disrupt this relationship; (iv) that the defendant did so with the intent to interfere with or disrupt this relationship; (v) that the economic relationship was actually interfered with or disrupted; and (vi) that the wrongful conduct of the defendant which was designed to interfere with or disrupt this relationship caused damage to the plaintiff. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Ca. 2003).

Pennsylvania does not recognize a tort for "intentional interference with prospective economic advantage," but does apply its "intentional interference with contractual relations" tort to prospective contracts.  Thus, to plead a claim for intentional interference with prospective contractual relations, a plaintiff must plead the following: "(i) a prospective contractual relation; (ii) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (iii) the absence of privilege or justification on the part of the defendant; and

13

(iv) the occasioning of actual damage resulting from the defendant's conduct." *Ruffing v. 84*

*Lumber Co.*, 600 A.2d 545 (Pa. Super. Ct. 1991).

  The Court finds that there is no real conflict as there is no substantive difference

between the laws of California and Pennsylvania in regard to claims for interference with

prospective economic advantage and, therefore, further analysis is not necessary.

*Hammersmith,* 480 F.3d at 230.


C.  <u>Claim V - Conversion</u>

  Under California law, conversion is the wrongful exercise of dominion over another's

personal property in denial of or inconsistent with his rights in the property.  The elements of

conversion are (i) the plaintiff's ownership or right to possession of the property; (ii) the

defendant's conversion by a wrongful act inconsistent with the property rights of the plaintiff;

and (iii) damage*s*.  *In re: Emery*, 317 F.3d 1064, 1069 (9th Cir.  2003).

  The elements of a claim for conversion under Pennsylvania law are similar: (i) the

deprivation of another's right in, or use or possession of, property, (2) without the owner's

consent, and (3) without lawful justification.  *Universal Premium Acceptance Corp. v. York*

*Bank and Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).

  The Court finds that there is no real conflict as there is no substantive difference

between the laws of California and Pennsylvania with regard to claims for conversion and,

therefore, further analysis is not necessary.  *Hammersmith,* 480 F.3d at 230.

D.        <u>Count VI - Violation of California Business and Professions Code Section 17200</u>

A significant difference in the law between California and Pennsylvania is the issue of standing under each state's unfair competition laws. The Pennsylvania Unfair Trade Practices and Consumer Protection Law requires a plaintiff to be a consumer who purchases or leases goods or services primarily for personal, family, or household purposes. *Reise v. QVC, Inc.*, 1998 WL 151026 3 n.1 (E.D. Pa. Mar. 1998) (standing differs significantly under California and Pennsylvania unfair competition statutes). Section 17200 of the California Business and Professions Code has a far more liberal standing requirement which permits any member of the public to bring suit. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 948 (Cal. 2003).

The California Business and Professions Code, called the Unfair Competition Law ("UCL"), is independent of the California Unfair Practices Act. *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). Its remedies are cumulative of remedies available under, for example, the California Unfair Practices Act, although they are more limited. *Id.* (allowing injunctive relief, restitution, and civil penalties, but not damages). Still, the scope of the UCL is broader than the unfair trade practices acts of both California and Pennsylvania. The coverage of the UCL is sweeping and embraces anything that can properly be called a business practice and that at the same time is forbidden by law. It governs anti-competitive business practices as well as injuries to consumers, and has a major purpose of the preservation of fair business competition. By proscribing "any unlawful" business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.

Captive Media acknowledges that "California's UCL differs substantially from the consumer protection statutes and unfair competition laws in every other state, and there is no comparable law in Pennsylvania. California's UCL dates to 1933 is generally regarded as the broadest such state law." Br. at 15.

Because there are relevant and significant differences between the UCL and Pennsylvania's unfair competition laws, the Court must proceed to the second prong of the inquiry and determine if this is a true or false conflict. When a case presents a true conflict, Pennsylvania choice-of-law rules "call for the application of the law of the state having the most significant contacts or relationships with the particular issue." *In re Estate of Agostini*, 457 A.2d 861, 871 (Pa. Super. Ct. 1983).

To the extent Captive Media brings a cause of action under Section 17200 to recover for ClubCom's alleged interference with the sale of its assets and conversion of the Lump-Sum Payment, the claim sounds more in tort than contract. Accordingly, the choice of law analysis is governed by the conflicts of laws analysis which applies to tort claims.

Captive Media argues that "the vast majority of the acts underlying CM's tort claims took place entirely or partially in California, or in unspecified and unknown jurisdictions." Br. at 6. This Court has previously rejected this argument and found that Pennsylvania is where a significant amount of the negotiations and performance of the License Agreement occurred. *See* Memorandum Opinion, May 9, 2008, at 16-18.

Furthermore, "[w]hen the injury occurred in two or more states,[5] or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of applicable law."  Restatement (Second) Conflict of Laws § 145 cmts. e, f.  Again, this factor weighs in favor of applying Pennsylvania law.

Examining the place of incorporation and place of business of the parties does not weigh in favor of either state.  Captive Media is a California corporation with its principal place of business in California; ClubCom is a Delaware corporation with its principal place of business in Pennsylvania.

Both California and Pennsylvania have an interest in the case and generally promote the policy of consumer protection.  California has an interest in protecting its residents, such as Captive Media, from the activity barred in the California UCL.  On the other hand, Pennsylvania has an interest in choosing the scope of unfair business practices for which a person or corporation is liable in its state, and, by the same token, protecting its residents from the extraterritorial effect of statutes for which Pennsylvania has no counterpart.

Finally, applying Pennsylvania law to conduct occurring in Pennsylvania would advance certainty, predictability and uniformity of result.

---

[5]     Captive Media claims that Movants committed the alleged torts "entirely or partially in California, or in unspecified and unknown jurisdictions."  (emphasis added).

Balancing all of the above, the Court finds that Pennsylvania has the most significant relationship to this claim and, therefore, Pennsylvania law will be applied, should Captive Media desire to continue to bring a claim for unfair competition.

E.      Count VII - Unjust Enrichment

The elements of a claim for unjust enrichment under California law are the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Lectrodryer v. SeoulBank*, 91 Cal. Rptr. 2d 881 (Cal. App. 2d Dist., 2000). To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (i) that the plaintiff conferred a benefit on the defendant, (ii) that the defendant appreciated the benefit, and (iii) that the defendant accepted and retained the benefit under circumstances such that it would be inequitable for defendant to retain the benefit without payment of value. *Mitchell v. Moore*, 729 A.2d 1200, 1202 (Pa. Super. Ct. 1999).

The Court finds and rules that there is virtually no difference between the law of Pennsylvania and California in regard to claims for unjust enrichment. *See In re Am. Investors Life Ins. Co.*, No. 04-2535, 2007 U.S. WL 2541216, at * 27 n. 16 (E. D. Pa. Aug. 29, 2007) (finding that there was no real conflict between the laws of California and Pennsylvania with regard to unjust enrichment.) Accordingly, no further analysis is necessary. *Hammersmith,* 480 F.3d at 230.

A.   Motion to Dismiss Pursuant to Fed.R. Civ. P. 12(b)(6) Filed by ClubCom and Precor,
     and Joined by Amer Sports Co.

     1.   ***Counterclaim Counts III and IV - Interference with Existing and Prospective***
        ***Contracts***

Captive Media's claims for interference with existing and prospective contracts

are based on two types of allegations, *to wit*:  (i) that Counterclaim Defendants tortiously

interfered with existing and prospective contracts to market, promote and commercialize the

ClubCom Network (Counts III-A and IV-A) and (ii) that Counterclaim Defendants tortiously

interfered with existing and prospective contracts to sell the assets of Captive Media to a third-

party (Count III-B and IV-B).  These claims will be addressed seriatim.

        a.   Claims for Interference with Existing and Prospective Contracts to
           Market, Promote and Sell the ClubCom Network

ClubCom, Precor, and Amer Sports Co. argue that the claims against

them for tortious inference with existing and prospective contracts to market, promote and sell

the ClubCom Network should be dismissed as barred by the gist of the action doctrine.[6]   The

gist of the action doctrine bars tort claims which arise solely from a contract between the

parties.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 n.8 (3d Cir. 2002) (*citing Phico Ins.*

---

[6]   Although the Pennsylvania Supreme Court has never actually adopted the gist of
the action doctrine, the Pennsylvania Superior Court and the Court of Appeals for
the Third Circuit, as well as a number of United States District Courts, have
predicted that it would.  *Williams v. Hilton Group PLC*, 93 Fed. Appx. 384, 385 (3d
Cir. 1004); *etoll, Inc. v. Elia/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super.
Ct. 2002); *Air Products and Chemicals, Inc. v. Eaton Metal Products Co.*, 256 F.
Supp. 2d 329 (E. D. Pa. 2003).  Captive Media concedes that the gist of the action
doctrine is Pennsylvania law and, this Court too, predicts that the Pennsylvania
Supreme Court would adopt it.

*Co. v. Presbyterian Medical Services Corp.,* 663 A.2d 753, 757 (Pa. Super. Ct. 1995)). The doctrine is based on the notion that the "important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 103-04 (3d Cir. 2001) (quoting *Redevelopment Auth. of Cambria County v. International Ins. Co.*, 685 A.2d 581, 590 (Pa. Super. Ct. 1996)), *cert. denied, Ellwood City Forge Co. v. Bohler-Uddeholm America, Inc.*, 534 U.S. 1162 (2002); *see also etoll, Inc. v. Elias/Savion Advertising, Inc.* 811 A.2d 10, 14 (Pa. Super. Ct. 2002).

California recognizes a similar doctrine, "the economic loss rule." The California Supreme Court explained its "economic loss rule" as follows:

> [T]he economic loss rule provides:  where a purchaser's expectations in a sale are frustrated because the produce he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.  This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. . . . The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise . . . Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving into the other . . . .

*Robinson Helicopter Co., Inc. v. Dana Corp.*, 102 P.3d 268 (Ca. 2004).

Pennsylvania also recognizes an economic loss doctrine[7] which precludes recovery for economic losses in tort actions where the party seeking recovery has suffered no physical or property damage. *Spivak v. Berks Ridge Corp.*, 586 A.2d 403, 405 (Pa. Super. Ct. 1991). However, the Court of Appeals for the Third Circuit has described the "economic loss doctrine" as "prohibit[ing] plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Bohler-Uddeholm*, 247 F.3d at 104 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995)) (emphasis added). In *Bohler-Uddeholm,* the appellate court explained that the economic loss doctrine originated in the context of courts precluding products liability tort claims in cases where one party contracts for a product from another party and the product malfunctions, injuring only the product itself. 247 F.3d at 104 n.11 (citing *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866-71 (1986)). As a result, although the appellate court determined that both the economic loss doctrine and the gist of the action doctrine are applicable to tort actions that inappropriately stem from contract liability, the gist of the action doctrine "is a better fit" for non-products liability cases. *Id.*

This Court finds the reasoning of the Court of Appeals to be persuasive. As a result, the Court will analyze the claims against ClubCom only in the context of the gist of the action doctrine.

---

[7] Again, similar to the gist of the action doctrine, the Pennsylvania Supreme Court has never adopted the economic loss doctrine. However, based on lower Pennsylvania court decisions supporting the economic loss doctrine, our appellate court has predicted that the Pennsylvania Supreme Court would apply the doctrine in certain situations. *King v. Hilton-Davis*, 855 F.2d 1047, 1053-54 (3d Cir. 1988).

Captive Media argues that its claims against ClubCom should not be barred by the gist of the action doctrine as its claims not only stem from the contract, but that "ClubCom, in collaboration with the other counterdefendants, also took affirmative steps not simply to terminate its own Agreement with [Captive Media] but . . . to actively interfere with [Captive Media's] long-standing relations with its advertisers and advertising agencies." Br. at 10. In support of this argument, Captive Media relies upon a decision of our appellate court which held that the gist of the action doctrine barred a fiduciary duty claim. *Bohler-Uddelholm Am.*, 247 F.3d at 104-05. The Court finds Captive Media's reliance on *Bohler-Uddelhom* misplaced as Captive Media has not alleged that ClubCom owed it any type of fiduciary duty.

The Court finds and rules that all of Captive Media's claims against ClubCom for interference with existing and prospective contracts to market, promote and sell the ClubCom Network are closely interwoven with the terms of the contract. Accordingly, the gist of the action doctrine bars Captive Media's claims against ClubCom for interference with existing and prospective contracts to market, promote and sell the ClubCom Network.

However, Precor and Amer Sports. Co. were not parties to the License Agreement between Captive Media and ClubCom and, thus, the gist of the action doctrine is not applicable to these counterclaim defendants.

Under Pennsylvania law, to state a claim for tortious interference with contractual relations, the complaint must allege the following elements: (1) a contractual or prospective relationship between the plaintiff and third parties; (2) a purpose or intent to harm the plaintiff by interfering with the contractual relationship or preventing the contractual relationship from accruing; (3) the absence of a privilege or justification on the part of the

22

defendant; and (4) the occurrence of actual harm or damage to the plaintiff as a result of defendant's conduct. *Fluid Power, Inc. v. Vickers, Inc.,* 1993 WL 23854, *3 (E. D. Pa. Jan.28, 1993). *See also Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).

If existing contracts are alleged to have been interfered with, the complaint should be able to allege what contracts or types of contracts they are. *Centennial School Dist. v. Independence Blue Cross*, 885 F. Supp. 683 (E. D. Pa. 1994).

Captive Media first contends that Precor and Amer Sports Co. interfered with its existing contractual relationships to sell the ClubCom Network. First Amended Counterclaim, at ¶¶ 66 - 69. However, as Counterclaim Defendants correctly note, Captive Media has failed to identify which, if any, existing contracts were hindered. While the Federal Rules of Civil Procedure do not require a complaint to set forth in detail the facts upon which the claim is based, the "short and plain statement of the claim" must be sufficient to give the defendant notice of the claim and the grounds upon which it is based. *Breslin v. Vornado, Inc.*, 559 F. Supp. 187, 191 (E.D. Pa. 1983). Captive Media has failed to identify even one existing contract which was allegedly interfered with by Counterclaim Defendants Precor and Amer Sports Co.

Proof of a claim of tortious interference with prospective contractual relations requires a showing of the existence of prospective contracts. *Alvord-Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1014 (3d Cir. 1993), *cert. denied*, *National Decorating Products Ass'n, Inc. v. Alvord-Polk, Inc.*, 514 U.S. 1063 (1995). "A prospective contract is something less than a contractual right, something more than a mere hope." The Court of

Appeals for the Third Circuit has held that the Pennsylvania Supreme Court requires that there be an objectively reasonable probability that a contract will come into existence. *Schulman v. J.P. Morgan Inv. Management, Inc.*, 35 F.3d 799, 808 (3d Cir. 1994).

Such an expectation may arise from an unenforceable express agreement or an offer. *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 925 (3d Cir. 1990), *cert. denied*, 498 U.S. 816 (1990). It exists if there is a reasonable probability that a contract will arise from the parties' current dealings. *Glenn v. Point Park College*, 272 A.2d 895, 898-899 (Pa. 1971).

Under Pennsylvania law, merely pointing to an existing business relationship or past dealings does not reach this level of probability. *See General Sound Telephone Co., Inc., v. AT & T Communications, Inc.*, 654 F. Supp. 1562, 1565 (E. D. Pa. 1987) (opportunity to bid on a contract is insufficient to establish the existence of a prospective contract under Pennsylvania law which requires considerably more than a reasonable probability of renewal, despite the existing business relationship).

Similarly, with respect to the allegations of interference with prospective business relations, Captive Media has failed to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged tortious interference on the part of the Precor and Amer Sports Co.

For all these reasons, the Court finds and rules that Captive Media has failed to allege an essential element or elements of its claims against Precor and Amer Sports Co. for interference with existing and prospective contracts to market, promote and sell the

ClubCom Network and, thus, same will be dismissed for failure to state a claim upon which relief may be granted.

        b.      <u>Claims For Interference with Existing and Prospective Contracts to Sell Assets of Captive Media</u>

The elements of a claim for tortious interference with contractual relations or prospective contractual relations are discussed at length *supra.*

Captive Media first contends that Counterclaim Defendants interfered with its <u>existing</u> contractual relationships to sell the assets of Captive Media. First Amended Counterclaim, at ¶ 66. However, as Counterclaim Defendants correctly note, Captive Media again has failed to identify which, if any, existing contracts were hindered. Captive Media has failed to identify even one existing contract which was allegedly interfered with by Counterclaim Defendants.

Similarly, with respect to the allegations of interference with prospective business relations, Captive Media has failed to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged interference on the part of the Counterclaim Defendants. Again, the general allegation that Captive Media had a "reasonable expectation of obtaining substantial revenue for its assets from an acquisition of assets" is far too broad to provide sufficient notice. First Amended Counterclaim, at ¶ 73.

Moreover, Captive Media admits that it was able to sell its assets, although less profitably. For a plaintiff to prevail on an interference claim, Pennsylvania courts require a breach or nonperformance of the contract at issue and do not permit recovery on

tortious interference claims where the performance of a contract was rendered more expensive or burdensome.  *See Gemini Physical Therapy and Rehab., Inc. v. State Farm Mut. Auto Ins. Co.*, 40 F.3d 63, 66 (3d Cir. 1994) (affirming dismissal of plaintiff's claim which alleged defendant's interference made performance of a contract with third-party more costly.)

For all these reasons, the Court finds and rules that Captive Media has failed to allege an essential element or elements of its claims against ClubCom, Precor, and Amer Sports Co. for interference with existing and prospective contracts to sell assets of Captive Media and, thus, these claims  will be dismissed for failure to state a claim upon which relief may be granted.


2.    ***Counterclaim Count V - Conversion***

Captive Media alleges in Count V of its First Amended Counterclaim that ClubCom has wrongfully converted the Lump-Sum Payment made pursuant to the License Agreement and that "counterdefendants have converted this property to their own use."  As explained *supra*, this claim against ClubCom is barred by the "gist of the action" doctrine. Accordingly, the request of ClubCom to dismiss Count V against it will be granted.

As to Precor and Amer Sports Co., Captive Media alleges that these counterclaim defendants "converted this property to their own use."   However, other than Captive Media's own speculation, there is no factual allegation to support this statement. Precor and Amer Sports Co. were not parties to the contract and Captive Media paid the Lump-Sum Payment only to ClubCom, not to Precor and Amer Sports Co.  Accordingly, the request

to dismiss Count V against Precor and Amer Sports Co. will be granted for failure to state a claim upon which relief may be granted.

3. ***Counterclaim Count VI - Unfair Competition Pursuant to 17200 of the UCL***

As discussed *supra,* the Court has found that any claim for unfair competition should be brought under Pennsylvania law, not the UCL. Accordingly, Count VI of the First Amended Counterclaim will be dismissed for failure to state a claim upon which relief may be granted.

4. ***Counterclaim Count VII - Unjust Enrichment***

Captive Media claims that "Counterdefendants have been unjustly enriched, . . ., by their wrongful retention" of the Lump Sum Payment, which was required to be paid by Captive Media pursuant to the License Agreement.

Pennsylvania courts have held that the existence of a written agreement precludes a claim of unjust enrichment. *Gee v. Eberle*, 420 A.2d 1050 (Pa. Super. Ct. 1980) (holding that "[t]he doctrine of unjust enrichment is clearly 'inapplicable when the relationship between the parties is founded on a written agreement or express contract' ")(citations omitted); *see also First Wisconsin Trust Co. v. Strausser*, 653 A.2d 688, 693 n.2 (Pa. Super. Ct. 1995). As Captive Media's claim for unjust enrichment is founded upon and governed by the express provisions of the License Agreement, Captive Media may not maintain a cause of

action in quasi-contract against ClubCom when a valid contract exists between them. Accordingly, the request of ClubCom to dismiss Count VII against it will be granted.

The Court finds and rules that there is no factual support for Captive Media's claim that Precor and Amer Sports Co. wrongfully retained the Lump Sum Payment. Precor and Amer Sports Co. were not parties to the contract and Captive Media paid the Lump-Sum Payment only to ClubCom, not to Precor and Amer Sports Co. Accordingly, the request to dismiss Count VII against Precor and Amer Sports Co. will be granted for failure to state a claim upon which relief may be granted.

     5.    ***Counterclaim Count VIII - Accounting***

Captive Media has alleged a cause of action for an accounting. ClubCom, Precor, and Amer Sports Co. have moved to dismiss the claim on the ground that an accounting is not a cause of action, but a remedy. The Court agrees with the Movants and finds that this count should be dismissed because it seeks an equitable remedy and does not constitute a valid cause of action. The Court, however, expresses, no view as to whether some form of an accounting would be an appropriate remedy in this case if Captive Media is able to establish liability.

6. ***Counterclaim IX - Declaratory Relief***

Precor and Amer Sports Co. argue that they should be dismissed from Count IX of the First Amended Counterclaim because they were not parties to the License Agreement on which Captive Media seeks declaratory relief.

Captive Media does not refute that neither Precor nor Amer Sports Co. was a signatory to the License Agreement; rather, Captive Media argues that the License Agreement "contained numerous provisions for the express benefit of Amer Oyj (and its 'affiliates,' including AmerCo) and Precor, " and that both agreements were negotiated "not simply for the benefit of CM and ClubCom," but for all of the counterclaim defendants, and thus each of the counterclaim defendants are a third-party beneficiary to both the License Agreement and the Letter Agreement. The Court finds that this argument is refuted by the express terms of the License Agreement.

Under Delaware law, to qualify as a third party beneficiary of a contract, (i) the contracting parties must have intended that the third party beneficiary benefit from the contract, (ii) the benefit must have been intended as a gift or in satisfaction of a pre-existing obligation to that person, and (iii) the intent to benefit the third party must be a material part of the parties' purpose in entering into the contract. *E. I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.* (3d Cir. 2001) (citing *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378, 1386 (Del. Super. Ct. 1990)) ("In order for third-party beneficiary rights to be created, not only is it necessary that performance of the contract confer a benefit upon a third person that was intended, but the conferring of the beneficial effect on

such third-party, whether it be creditor or donee, should be a material part of the contract's purpose.").

      ClubCom and Captive Media are the only signatories to the License Agreement and the Letter Agreement.[8]  Paragraph 26 of the License Agreement specifically provides as follows

> 26.  No Third Party Rights Created.  The provisions of this Agreement are for the <u>sole benefit</u> of the parties hereto and not for any other person except as specifically set forth herein.  In performance of any obligations hereunder, the parties are acting solely in connection with this Agreement and with respect to each other and no contractual or service relationship shall be deemed established between ClubCom and any other person or between Captive and other person, unless provided herein.

License Agreement, at ¶ 26 (emphasis added).

      Moreover, the License Agreement also provides as follows:

> 22.  Entire Agreement; Amendments.  This Agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the parties with regard thereto.  This Agreement may be amended, changed or modified in any material respect, as well as discharged or abandoned, only by an agreement in writing, signed by the parties hereto.

      There is nothing in the License Agreement which establishes or even suggests that Precor and/or Amer Sports Co. were intended third-party beneficiaries of the contract or that  conferring a beneficial effect on Precor and/or Amer Sports Co. was a material part of the purpose of the contract.

---

[8]    Although Paul Bryne, the President of Precor, executed the License Agreement, he signed the License Agreement as "President" of Clubcom, not as an agent of Precor.

Accordingly, Precor and Amer Sports Co. will be dismissed from Count IX of the First Amended Counterclaim.

　　　　　7.　　　***Counterclaim X - Constructive Trust***

Captive Media has alleged a cause of action for the imposition of a constructive trust. ClubCom, Precor, and Amer Sports Co. have moved to dismiss the claim on the ground that the imposition of a constructive trust is not a cause of action, but a remedy. The Court agrees with the Movants and finds that this count should be dismissed because it seeks an equitable remedy and does not constitute a valid cause of action.

B.　　<u>Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(5), Or In the Alternative, 12(b)(6) filed by Amer Sports Oyj</u>

　　　　　1.　　　**Motion to Dismiss for Lack of Personal Jurisdiction**

Amer Oyj moves to dismiss the case against it pursuant to Rule 12(b)(2) on the basis that the court lacks personal jurisdiction over it.

A federal district court "may exercise personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state in which it sits." *Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc.*, 983 F.2d 551, 554 (3d Cir. 1993) (*citing Fed. R. Civ. P. 4(e)*). The United States Court of Appeals for the Third Circuit has provided the following guidance with respect to the relationship between state and federal law:

> In brief, to exercise personal jurisdiction over a defendant, a federal court . . . must undertake a two-step inquiry. First, the court must apply the relevant state

> . . . statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution.

*IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998).

The reach of the Pennsylvania long-arm statute is "coextensive" with the due process clause. *North Penn Gas v. Corning Natural Gas Co.*, 897 F.2d 687, 690 (3d Cir.), *cert. denied,* 498 U.S. 847 (1990). The due process clause permits the court to assert personal jurisdiction over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

a.    <u>General Jurisdiction</u>

Personal jurisdiction may be either general or specific. General jurisdiction is implicated when the claim arises from the defendant's non-forum-related activities. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 411 n.9 (1984). In such a case, the plaintiff "must show significantly more than mere minimum contacts." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). To assert general jurisdiction, the plaintiff must demonstrate that the defendant's contacts with the forum state were "continuous and substantial." *Id.; Gehling v. St. George's Sch. of Med.*, 773 F.2d 539, 541 (3d Cir. 1985). The threshold for establishing general jurisdiction is very high and requires a showing of "extensive and pervasive" facts demonstrating connections with the forum state. *Reliance Steel Prods. Co. v. Watson, Ess. Marshall & Enggas,* 675 F.2d  587, 589

(3d Cir. 1982). Federal courts sitting in Pennsylvania consider the following objective criteria in ascertaining the existence of general jurisdiction:

(i) whether defendant is incorporated or licensed to do business in Pennsylvania;

(ii) whether the defendant has ever filed any tax returns with the Commonwealth of Pennsylvania;

(iii) whether the defendant files administrative reports with any agency or department of the Commonwealth;

(iv) whether the defendant regularly purchases products or supplies within Pennsylvania for use in its business outside of the state;

(v) whether the defendant owns land or property within the state;

(vi) whether the defendant advertises in Pennsylvania; and

(vii) whether the defendant maintains an agent in Pennsylvania.

*Wims v. Beach Terrace Motor Inn, Inc.*, 759 F. Supp. 264, 269 (E.D. Pa. 1991).

Kristina Huttunen, Vice President, Legal Affairs of Amer Oyj, has submitted an affidavit on behalf of Amer Oyj, in which she avers that Amer Oyj is a company incorporated under the laws of Finland and has its principal place of business in Finland; that all employees of Amer Oyj are based in Finland or in other countries in Europe; that Amer Oyj does not and never has had an office in Pennsylvania, maintained employees in Pennsylvania or owned real property in Pennsylvania; that Amer Oyj does not and never has entered into any contract to perform services within Pennsylvania for Captive Media or anyone else; that Amer Oyj has never engaged in insurance business within the state of Pennsylvania; that Amer Oyj has never accepted an election or appointment within the state of Pennsylvania; and that Amer

33

Oyj has never executed a bond, applied to a governmental unit or committed a violation of any law or court order within Pennsylvania.

Whether a defendant's contacts are sufficiently "continuous and substantial" to support general jurisdiction must be decided on a case-by-case basis. *Gavigan v. Walt Disney World Co.,* 630 F. Supp. 148, 150 (E.D. Pa. 1986). The Court finds that the heavy requirements for general jurisdiction are not met. Captive Media has not established that Amer Oyj has contacts with Pennsylvania which have been both continuous and substantial, and accordingly, the requirements for the exercise of general personal jurisdiction are not met.

      b.    <u>Specific Jurisdiction</u>

Specific jurisdiction applies where the plaintiff's cause of action arises from the defendant's particular forum-related activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 426, 472 (1985). "To establish specific jurisdiction a plaintiff must show that the defendant has minimum contacts with the state 'such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Captive Media does not contend that Amer Oyj is "doing business" directly in Pennsylvania, rather, Captive Media asserts that Amer Oyj's connection with Pennsylvania is "by and through its agents, including the other Counterdefendants and the activities of Messrs. Berens and Byrne." Br. at 8.

Although Captive Media has failed to demonstrate that Amer Oyj itself has sufficient contacts with Pennsylvania to satisfy the purposeful availment requirement, personal jurisdiction may nonetheless be appropriate if Captive Media can establish that an alter-ego relationship exists between Amer Oyj and the other Counterclaim defendants. *See Davlyn Mfg. Co. v. H & M Auto Parts, Inc.*, 414 F. Supp. 2d 523, 531 (E .D. Pa. 2005) ("Where . . . a corporation has insufficient contacts with the forum state to satisfy due process, a court may nonetheless exercise personal jurisdiction if the individual or corporation is an alter ego . . . of a corporation that would be subject to personal jurisdiction . . . .").

However, a foreign corporation is not subject to the jurisdiction of the forum state merely because of its ownership of the shares of stock of a subsidiary doing business in that state. *Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800, 805-06 (3d Cir.1981) abrogated on other grounds by EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046, 1049 (3d Cir.1993)); see also Cannon Mfg. Co. v. Cudahy Co.,* 267 U.S. 333 (1925) ("[The] use of a subsidiary does not necessarily subject the parent corporation to [personal] jurisdiction." ). "The activities of a parent company are imputed to the subsidiary only if the subsidiary is the parent's agent or alter ego so that the independence of the separate corporate entities was disregarded." *Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 76 (3d Cir. 2006).

"[F]actors which may have a bearing on the jurisdictional issue are whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and whether the independence of the separate corporate entities was disregarded." *Lucas,* 666 F.2d at 806; *Davlyn Mfg. Co.*, 414 F.

Supp. 2d at 531. Also relevant to the general determination of whether one entity is the alter-ego of another are:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder

*Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-85 (3d Cir. 2001).

> A plaintiff can also show that a subsidiary is the alter ego of a parent corporation, such that imputing jurisdictional contacts is appropriate, by demonstrating that the degree of control exercised by the parent is greater than normally associated with common ownership and directorship and that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can be said to be a mere department of the parent.

*Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 420 (E. D. Pa. 2005) (quotations omitted).

Captive Media first argues that "ClubCom consented to this Court's personal jurisdiction on behalf of itself and its principals and co-conspirators, including Amer Oyj." Br. at 5. However, Captive Media presents no basis to suggest that Amer Oyj was involved in the commencement of this litigation. The Court rejects this argument summarily.

Next, Captive Media argues that certain documents, including Amer Oyj's website, reveal that "Amer Oyj's Board of Directors directs, with respect to various subsidiaries, fully integrated strategic and operational planning, budgeting, investment planning, financial administration, and risk management." Br. at 6. However, nothing in these documents suggests that Amer Oyj dominates or controls any of its subsidiaries. To the contrary, the Amer Oyj 2007 Financial Report states "[t]here were no intersegment business

operations" between the entities, and that Paul Byrne "serves as Precor's brand representative on the executive board but is not an employee or officer" of Amer Oyj.

Lastly, Captive Media's argument that the jurisdictional contacts of its subsidiaries may be imputed to Amer Oyj because certain individuals served as officers and/or directors of both Amer Oyj and its subsidiaries fails as a matter of law. *See Amburgey v. Atomic Ski USA, Inc.*, 2007 Wl 1464380 at *5-7 (D. Me. 2007); *see also Papercraft Corp. v. Procter & Gamble Co.*, 439 F. Supp. 1060, 1062 (W. D. Pa. 1977) (holding that individual serving on board of both parent and subsidiaries does not subject parent to jurisdiction).

Captive Media has presented no evidence or allegations to show that Amer Oyj exercises a greater degree of control over ClubCom, Precor and/or Amer Sports Co., than is normally associated with a parent-subsidiary relationship. Nor has it alleged or shown that Amer Oyj directly or indirectly controls any of the daily operations of ClubCom, Precor and/or Amer Sports Co.

Based on the evidence in the record, the Court is unpersuaded that any contacts the Counterclaim Defendants have with Pennsylvania should be imputed to Amer Oyj for the purpose of personal jurisdiction. In sum, Captive Media invites the Court to speculate that Amer Oyj has emasculated the corporate identities of its subsidiaries. The Court declines to do that. Accordingly, the Court finds and rules that the requirements for the exercise of specific personal jurisdiction are not met and Counterclaim Defendant Amer Oyj will be dismissed.

c.   <u>Request for Limited Discovery</u>

Captive Media requests jurisdictional discovery to develop additional facts.  The Court finds and rules that Captive Media has failed to provide facts beyond vague allegations and questions regarding the corporate form, which show why jurisdiction would be found with discovery.  Given the dearth of contacts that Amer Oyj maintains with the forum state, the Court finds and rules that discovery is unlikely to be useful in establishing jurisdiction.   Thus, the Court exercises its broad discretion to decide whether discovery is required and denies Captive Media's request for same.


2.   **Motion to Dismiss for Insufficient Service of Process**

Amer Oyj has also moved to dismiss the First Amended Counterclaim against it pursuant to Rule 12(b)(5), which provides that a party may plead the defense of insufficient service of process to a claim for relief.  Even though the Court has ruled that the First Amended Counterclaim should be dismissed against Amer Oyj on the basis that the Court lacks personal jurisdiction over Amer Oyj, the Court finds that  Rule 12(b)(5) provides an additional basis for dismissal.

The Federal Rules of Civil Procedure dictate the appropriate method of service of process on a foreign entity.  In particular, Rule 4(h) states that a foreign corporation, from whom a waiver of service has not been obtained, must be serviced in "any manner prescribed by Rule 4(f) . . . ." Fed. R. Civ. P. 4(h).  Rule 4(f) states a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice,

such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Finland, where Amer Oyj is incorporated and located, is a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents on the Service Abroad of Judicial and Extrajudicial Documents* in Civil and Commercial Matters, fed.10, 1969, 20 U.S.T. 361; reprinted in Fed. R. Civ. P. 4.

The Hague Convention requires each country to designate a Central Authority to which any request for service will be sent. *Id*., art. 2. To serve a Finnish corporation under the Hague Convention, service must be sent in duplicate to the Ministry of Justice in Finland. See Hague Convention, art. 3. The Ministry of Justice then arranges for service. *Id.,* art. 5.

In this case, Captive Media argues that service was properly effected on Amer Oyj because service was made upon The Corporation Trust Company, which is the registered agent for Amer Sports Co. However, as Amer Oyj points out, The Corporation Trust Company is not a registered agent for Amer Oyj and is not authorized to accept service on behalf of Amer Oyj. *See* Berens Dec. ¶ 5. Therefore, the Court finds and rules that such service was defective and, therefore, Amer Oyj has not been properly served with a copy of the Summons or First Amended Complaint.

### CONCLUSION

For the abovementioned reasons, the Motion to Dismiss filed by ClubCom and Precor, and joined by Amer Sports Co., will be granted in its entirety. The Motion to Dismiss filed by

Amer Oyj also will be granted in its entirety.   An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

CLUBCOM, INC.,                                    )
                                                  )
        Plaintiff,                        )
                                                  )
        v.                                )     02: 07-cv-1462
                                                  )
CAPTIVE MEDIA, INC., d/b/a HEALTH                 )
CLUB PANEL NETWORK,                               )
                                                  )
        Defendant.                        )

---

CM SHAREHOLDER HOLDINGS, INC.,                    )
f/k/a/ CAPTIVE MEDIA, INC.,                       )
d/b/a HEALTH CLUB PANEL NETWORK,                  )
a California Corporation,                         )
                                                  )
        Counterclaim Plaintiff,           )
                                                  )
        v.                                )     02: 07-cv-1462
                                                  )
CLUBCOM, INC., a Delaware Corporation;            )
PRECOR, INC., a Delaware Corporation;             )
AMER SPORTS COMPANY, a Delaware                   )
Corporation; and AMER SPORTS OYJ a/k/a            )
AMER SPORTS CORPORATION, organized                )
under the laws of Finland,                        )
                                                  )
        Counterclaim Defendants.          )

**ORDER OF COURT**

    AND NOW, this 31st day of January, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED** as follows:

1. The Motion to Dismiss Counts III through X of Captive's First Amended Counterclaim filed by ClubCom, Inc. and Precor, and joined by Amer Sports Co., is **GRANTED** as follows:

a. The gist of the action doctrine bars Captive Media's claims against ClubCom, Inc., for interference with existing contracts to market, promote and sell the ClubCom Network (Count III-A), for interference with prospective contracts to market, promote and sell the ClubCom Network (Count IV-A), and conversion (Count V) and therefore, Counterclaim Defendant ClubCom's motion is **GRANTED**;

b. The Motion to Dismiss the claims in Count III in their entirety against Precor and Amer Sports is **GRANTED** for failure to state a cause of action on which relief may be granted;

c. The Motion to Dismiss the claims in Count IV-B (tortious interference with existing and prospective contractual relations to sell assets of Captive Media) against ClubCom is **GRANTED** for failure to state a cause of action on which relief may be granted;

d. The Motion to Dismiss the claims in Count IV in their entirety against Precor and Amer Sports Co. is **GRANTED** for failure to state a cause of action on which relief may be granted**;**

e.   The Motion to Dismiss the claims in Count V (conversion) against Precor and Amer Sports Co. is **GRANTED**;

f.   The Motion to Dismiss Count VI (unfair competition under California law) is **GRANTED**;

g.   The Motion to Dismiss Count VII (unjust enrichment) is **GRANTED**;

h.   The Motion to Dismiss Count VIII  (accounting) is **GRANTED;**

i.   The Motion to Dismiss the claims in Count IX (declaratory relief) against Precor and Amer Sports Co. is **GRANTED**; and

j.   The Motion to Dismiss Count X of the First Amended Counterclaim (constructive trust)  is **GRANTED**.

2.   The Motion by Amer Oyj To Dismiss the First Amended Counterclaim is **GRANTED;**

3.   It is further **ORDERED** that Counterclaim Defendants Precor, Inc., Amer Sports Company, and Amer Sports OYJ a/k/a Amer Sports Corporation are dismissed as counterclaim defendants in this matter and the caption is amended to so reflect as follows:

CLUBCOM, INC.,                               )
                                             )
                    Plaintiff,               )
                                             )
             v.                              )        02: 07-cv-1462
                                             )
CAPTIVE MEDIA, INC., d/b/a HEALTH            )
CLUB PANEL NETWORK,                          )
                                             )
                    Defendant.               )

CM SHAREHOLDER HOLDINGS, INC.,   )
f/k/a/ CAPTIVE MEDIA, INC.,       )
d/b/a HEALTH CLUB PANEL NETWORK,)
a California Corporation,          )
                                             )
                    Counterclaim Plaintiff,  )
                                             )
             v.                              )        02: 07-cv-1462
                                             )
CLUBCOM, INC., a Delaware Corporation; )
                                             )
                    Counterclaim Defendant.  )

     4.     The Motion by CM Shareholder Holdings, Inc., f/k/a Captive Media, Inc. To

Deny Counterdefendant Amer Sports Oyj a/k/a Amer Sport Corporation's Motion to Dismiss,

Without Prejudice, and Enter Order Allowing Limited Discovery is **DENIED**;

                                               BY THE COURT:

                                             s/Terrence F. McVerry
                                             United States District Court Judge

cc:     Diane M. Nardi, Esquire
        Brown Rudnick LLP
        Email: dnardi@brownrudnick.com

        Emilio A. Galvan, Esquire
        Brown Rudnick LLP
        Email: egalvan@brownrudnick.com

        J. Scott Humphrey, Esquire
        Seyfarth Shaw
        Email: shumphrey@seyfarth.com

        Louis S. Chronowski, Esquire
        Seyfarth Shaw LLP
        Email: lchronowski@seyfarth.com

        Martin S. Siegel, Esquire
        Brown Rudnick LLP
        Email: msiegel@brownrudnick.com

        Michael R. Levinson, Esquire
        Seyfarth Shaw LLP
        Email: mlevinson@seyfarth.com

        Michael D. Wexler, Esquire
        Seyfarth Shaw
        Email: mwexler@seyfarth.com

        Susan A. Yohe, Esquire
        Buchanan Ingersoll
        Email: susan.yohe@bipc.com

        David A. Strassburger, Esquire
        Strassburger, McKenna, Gutnick & Gefsky
        Email: dstrassburger@smgglaw.com

        Louis P. Petrich, Esquire
        Leopold, Petrich & Smith, P.C.
        Email: lpetrich@lpsla.com

        Thomas J. Peistrup, Esquire
        Leopold, Petrich & Smith
        Email: tpeistrup@lpsla.com

Vincent Cox, Esquire
Leopold, Petrich & Smith
Email: vcox@lpsla.com